UNITED STATES of America,
Plaintiff-Appellee,

v.

Ben HICKMAN, Defendant-Appellant.

No. 17452.

United States Court of Appeals,
Seventh Circuit.

May 12, 1970.

Rehearing Denied June 18, 1970.

**516**

Sheldon H. Cohan, Frederick T. Work, Gary, Ind., for appellant.

Alfred W. Moellering, U. S. Atty., Richard L. Kieser, Asst. U. S. Atty., Fort Wayne, Ind., for appellee.

Before KNOCH, Senior Circuit Judge, CUMMINGS, Circuit Judge, and GORDON, District Judge.*

KNOCH, Senior Circuit Judge.

Defendant-appellant, Ben Hickman, having waived indictment, was tried on an information charging him with knowingly, willfully, etc. purchasing, selling, dispensing and distributing 13 grams more or less of heroin hydrochloride not in or from the original stamped package, in violation of Title 26, U.S.C. § 4704(a). A jury found him guilty as charged and he was sentenced to serve a term of five years. This appeal followed.

The defendant contends he was prosecuted for violation of a section of the Internal Revenuc Code which is unconstitutionally being used as a pretext for penal sanctions because, Congress having declared heroin to be contraband, no substantial income can be produced and the section bears no reasonable relation to Congressional taxing authority.

■ There is, however, a substantial legitimate traffic in narcotics. The existence of about 400,000 registered dealers under this Narcotics Act in 1967, according to a United States Treasury Department publication cited by the United States Supreme Court in Minor v. United States, 1969, 396 U.S. 87, 97–98, 90 S.Ct. 284, 24 L.Ed.2d 283, lends credence to a Congressional intent to regulate the activities of those dealing legitimately in narcotics.

Both *Minor* and Turner v. United States, 1970, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610, were pending in the United States Supreme Court when this case was under consideration and our decision was held in abeyance awaiting the release of an opinion in those matters. *Minor* held adversely to defendant with respect to his contention that Title 26 U.S.C. § 4704(a), prohibiting sales other than from the original stamped package, was an invasion of his rights under the Fifth Amendment, specifically his privilege not to incriminate himself by purchase of tax stamps which would immediately subject him to prosecution under other laws for illegal possession of heroin. *Turner* disposed of his further contention that the statutory presumption in § 4704(a), as described in the instructions to the jury, violated defendant's right of due process and the presumption of innocence, although the Trial Judge instructed the jury at the outset of the trial and after argument of counsel at the conclusion of the evidence on the presumption of innocence and the standard of reasonable doubt.

* Judge Gordon is sitting by designation from the United States District Court for the Eastern District of Wisconsin.

As *Minor* noted, (pp. 93–94, 90 S.Ct. 284) only dealers who are in compliance with state law may register and then purchase tax stamps under this Act. This represents a marked distinction from the firearms statutes, for example, from which defendant draws analogies, which called on a registrant to invite attention to the fact that he was in possession of a weapon which it was illegal to possess.

In *Turner,* as here, the Trial Judge charged the jury, in accordance with the statute, that possession of drugs not in a stamped package was prima facie evidence that defendant had violated the statute. The Trial Judge here told the jury that the government must prove beyond a reasonable doubt that the defendant had possession of the narcotic drug and that there was an absence of the proper tax-paid stamp, and then if the defendant's possession was not explained to the satisfaction of the jury, the jury "may find that he has violated the statute." The instruction used was taken from the LaBuy Manual on Jury Instructions in Federal Criminal Cases, 36 F.R.D. 457, 627 § 17.04. The U. S. Supreme Court upheld James Turner's conviction on the counts dealing with heroin.

Defendant asserts that apart from the statutory presumption there was no evidence of sale, purchase, distribution or dispensing of any narcotic drug. The defendant took the stand and testified that he had never been convicted of any crime; that late in the evening of May 11, or in the early hours of May 12, 1967, he received a telephone call from a man named "Shep" with whom he had shot pool almost daily for the previous six months. He said that because of his skill he was called "Pool Slicker." Shep had asked to meet him in the restaurant at 25th and Deleware Streets in Gary, Indiana, to discuss something important which he did not explain further. Defendant said he thought Shep wanted to shoot pool because that was all they did together apart from playing Poker. Defendant stated that there was no mention of heroin, that he did not know whether Shep used narcotics and that defendant had no narcotics in his possession nor any intent to deal in them. He stated that he borrowed his landlady's car, a 1965 Cadillac, as he owned no automobile. When he did not see Shep in the restaurant, after having had two cups of coffee, he left. He testified that he was stopped by another car about six or seven blocks down 25th; that he did not see any package on the armrest of the car and saw the government's exhibits containing white powder for the first time in court at his trial. As noted below, his testimony contradicted that of other witnesses and thus presented an issue of fact for the jury.

As the government argued before us, the statutory presumption flowing from proof of possession is soundly based. A jury may logically infer from mere possession of narcotic drugs not in or from the original stamped package that a defendant who does not himself have the capacity to produce the narcotic must have purchased it in violation of the statute.

Defendant argues that there was no reasonable cause to arrest him at all apart from evidence obtained through overhearing a telephone conversation which defendant asserts he had every right to believe was private, thus violating his constitutional rights against unreasonable search and seizure under the Fourth Amendment.

In Katz v. United States, 1967, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576, on which defendant relies, federal agents eavesdropped on a telephone conversation through use of an electronic device. In this case Special Agent Abraham Azzam of the Federal Bureau of Narcotics testified that he and other agents were at the Gary, Indiana, Police Department with several Gary police officers and a Bureau of Narcotics informant, all of whom went upstairs to the Detective Bureau where Agent Azzam

dialed a telephone number. The ensuing conversation was carried on by the informant on one extension while Agent Azzam and two other agents listened on other extension telephones, obviously with the knowledge and consent of the informant. This conversation was overheard on a regularly used telephone extension with the consent of one party to the conversation, as the Supreme Court said in Lee v. Florida, 1968, 392 U.S. 378, 381, 88 S.Ct. 2096, 20 L.Ed.2d 1166, in commenting favorably on Rathbun v. United States, 1957, 355 U.S. 107, 78 S. Ct. 161, 2 L.Ed.2d 134, on which the government relies.

■ Defendant also argues that it was error to admit the contents of this telephone conversation in evidence because there was no identification of the defendant as the person to whom the informant was speaking.

Before the content of the conversation was disclosed in response to objections, the government counsel explained that the testimony was offered not for its truth but only to explain the actions of the officers and subsequent events, whereupon objection was overruled. Agent Azzam testified that a female voice answered. The informant said: "Is Slicker in? This is Shep," and the voice said, "Yes, just a minute." A male voice came on the line. The informant said: "Is that you, Slicker? This is Shep." The male voice said "Yes," and the informant asked for three "eggs" which Agent Azzam said meant three spoons of heroin, though he also testified that this term was not generally used. The male voice replied, "Yes, I will meet you in the same place in about an hour. Have you got the money?" The informant said, "Yes, I have. I will be in the restaurant drinking some coffee," and the conversation ended.

The jury could have decided that defendant was not the "Slicker" on the telephone, but this conversation explained why Agent Azzam (and other agents) were watching a restaurant at 25th and Madison Streets in Gary within the hour afterward. Agent Azzam's acquisition of the telephone number used, the first references he heard to a man called "Pool Slicker," his view of a Cadillac automobile, Illinois license No. BG 333, were all covered in a separate hearing on a motion to suppress and need not concern us here.

In a short time, Agent Frank Cruz, also in the vicinity, who had heard the telephone conversation, advised Agent Azzam by radio that a 1965 Cadillac, Illinois license No. BG 333, which he knew to be the suspect car, was driving east on 25th toward Broadway. Agent Azzam then himself observed that car, followed it, drew level with the Cadillac and recognized the defendant whom he had seen before in connection with this same car and who fitted the physical description given to him of "Pool Slicker." The defendant arrived at the restaurant about 1:30 A.M., almost exactly an hour after the conversation. After a further period of surveillance, the two cars of agents stopped the further progress of defendant's car. He was told he was under arrest. Agents Assam and Cruz both saw a wax paper package bound with a rubber band on top of the armrest in the front seat, which Agent Azzam picked up. It contained a white powder, a sample of which produced a positive reaction to a Marquis Reagent field test indicating the presence of opium. The white substance when later weighed proved to be about 13 grams or three spoons.

■ The defendant sees no proper foundation for the testimony of the government's chemist witness as to the nature of the substance seized from the defendant. The witness was Leon E. Wener, Chief of the Laboratory of the Alcohol and Tobacco Tax Division of the Treasury Department, a United States chemist for about 28 years, with the Treasury Department for about eleven years, whose duties included analyzing substances submitted by the Bureau of

Narcotics and Dangerous Drugs. He produced envelopes containing powder, described their general custody from the time of receipt in the laboratory to delivery to government counsel in the course of testimony in the Courtroom. He was also cross-examined on the facts concerning custody. Agent Azzam had testified that he maintained possession of the package taken from the defendant until he delivered it to the chemist. The envelopes became government exhibits.

Mr. Wener described his education, experience, publications, and professional affiliations in detail. He then testified that he analyzed the white powder substance and found it to contain heroin hydrochloride derivative of opium. initially weighing 12.155 grams.

■ Defendant argues that Mr. Wener did not testify to the type of analysis performed; therefore, he could not be adequately cross-examined as to whether his opinion was or was not correctly drawn. However Mr. Wener did state that he performed chemical and crystalgraphic analysis and the Laboratory Report was submitted to defense counsel.

Defendant also complains that the Information on which he was tried was insufficient for uncertainty and lack of specificity in failing to inform the defendant of the exact nature of the acts allegedly committed in violation of the law.

■ The Information gives the date of the offense, the type and quantity of narcotic involved, the statute allegedly violated. The conjunctive wording does not render it defective. Morrison v. United States, 124 U.S.App.D.C. 330, 1966, 365 F.2d 521, 523 and cases there cited. See also Powell v. United States, 7 Cir., 1964, 338 F.2d 556, 557.

Careful consideration of all other points and authorities to which our attention has been invited does not alter our conviction that the judgment of the District Court must be affirmed.

Affirmed.