**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**James G. DEMOPOULOS, Defendant-**
**Appellant.**

**No. 74–1341.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 18, 1974.

Decided Nov. 5, 1974.

Rehearing en banc Denied Dec. 12, 1974.

Certiorari Denied March 24, 1975.
See 95 S.Ct. 1427.

**1174**

George B. Collins, Chicago, Ill., for defendant-appellant.

James R. Thompson, U. S. Atty., Gary L. Starkman, Michael P. Mullen, Asst. U. S. Attys., Chicago, Ill., for plaintiff-appellee.

Before HASTINGS, Senior Circuit Judge, and CUMMINGS and PELL, Circuit Judges.

CUMMINGS, Circuit Judge.

Defendant was indicted in the Northern District of Illinois for violating 18 U.S.C. § 1623(a), which specifically proscribes knowingly making false material declarations while a witness before a grand jury.[1] The indictment charged defendant with making the following false declarations:

> "that he did not meet in the Rex Restaurant in Chicago in or about February 1969 with Peter Boznos and Sam Crispino, that he did not receive an

---

[1]. 18 U.S.C. § 1623 provides in pertinent part:

"(a) Whoever under oath in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration or makes or uses any other information, including any book, paper, document, record, recording, or other material, knowing the same to contain any false material declaration, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

envelope, parcel or package from either Sam Crispino or Peter Boznos in the Rex Restaurant in Chicago in or about February 1969, and that he did not receive any money from either Sam Crispino or Peter Boznos in the Rex Restaurant in Chicago in or about February, 1969."

After a jury trial, defendant was convicted and was sentenced to 18 months in prison. On appeal, defendant raises numerous alleged errors and asserts that considering them together, he is entitled at least to a new trial. We affirm his conviction.

### Sufficiency of the Evidence

█ Defendant first challenges the sufficiency of the evidence. The evidence shows that in early 1969 Samuel Crispino contracted to purchase the Cafe Chablis on West North Avenue in Chicago. He was represented in this transaction by attorney Peter Boznos. Crispino made his purchase of the restaurant contingent on his procuring a liquor license. At the time that the closing was originally scheduled in mid-February 1969, he had not obtained the liquor license, although he had applied for it on January 28, 1969. The liquor license was finally issued on February 26, 1969, and the closing took place on that date.

While Crispino's license application was pending in February 1969, Boznos received an anonymous telephone call from someone who said he was a Chicago Police Department vice officer. The caller said that Crispino's liquor license application would not be approved until a $5,000 payment was made. The caller later agreed to a reduced payment of $3,000. Boznos was instructed to go to the Rex Restaurant in Chicago at midnight on a certain date to make the payment. Boznos was told that the defendant would be present at that restaurant to pick up the money.

A few days after this telephone call, Boznos and Crispino met at the Rex Restaurant. Crispino brought with him a package containing $2,000. (Why Crispino brought $2,000 when $3,000 had been agreed upon over the phone is not explained by any testimony in the record and is not relevant here.) Boznos testified that defendant joined them at their table a few minutes later. The defendant told Boznos that Crispino should put the money under the table. Crispino did so, and defendant picked it up and left the restaurant five to six minutes thereafter.

Boznos positively identified defendant as the recipient of the $2,000. Crispino described the recipient as a slender man, 5′6″ to 5′7″ in height, weighing 160 pounds, with black, wavy hair, about 30 to 35 years old, and appearing to be of Greek or Spanish extraction. The defendant was of Greek extraction and described himself as 35 years of age, 5′6¼″ tall, weighing 165 to 170 pounds and having black hair. However, at the trial, when asked if the man to whom he had passed the $2,000 was in the courtroom, Crispino uncertainly selected Gregory Vlamis, a relative of defendant, who was seated in the first row of benches. Vlamis was 30 years old, 170 pounds and 5′11″ tall. Crispino made it plain that he was not sure that this was the man in the Rex Restaurant.

Boznos' identification of defendant does not stand alone, for Crispino's portrait of the other person at the Rex Restaurant exactly matched defendant's self-description, even though Crispino also hesitatingly selected Gregory Vlamis as the bagman.

In our judgment, the testimony of Boznos and Crispino amply supported the verdict. It was within the jury's province and not for us to assess the credibility of the Government's principal witness, Peter Boznos.

### Admissibility of Telephone Conversation

█ Defendant next asserts that it was reversible error for the trial court to permit the jury to consider the aforesaid telephone conversation that Boznos had with the unidentified caller seeking a $5,000 bribe in exchange for police approval of the liquor license. Defendant contends that the conversation was inad-

missible hearsay. Government counsel offered this conversation not to prove the truth of the matter but "as background operative facts to show subsequent actions of this and other witnesses" [Boznos and Crispino]. This limited purpose was reiterated to the jury in the prosecutor's closing argument, and the district court gave the following limiting instruction:

"During the examination of the witness Peter Boznos, he testified concerning a phone conversation he had with an unknown individual from the Austin Police District. This conversation was admitted to allow you to understand subsequent actions which were taken by the witness Boznos and others. It was not offered for the truth of the matters contained in that phone conversation, and you are to consider that phone conversation only as it pertains to the subsequent actions of the witness Boznos and others, and you are not to consider it for the truth of anything, nor as proof of the matters asserted in that conversation."

In this setting, it was permissible to admit the challenged testimony. See Tritsis v. Backer, 511 F.2d 1021 (7th Cir. 1974); United States v. Hickman, 426 F.2d 515 (7th Cir. 1970).

■ In support of his contention that the telephone conversation was hearsay used to prove the truth of its contents, defendant claims that the prosecutor could have characterized him as a bagman in the closing argument, as he did, only if the conversation was so used. This claim is simply wrong. Defendant was a lawyer without official influence on applications for liquor licenses. In light of this and since Crispino was providing $2,000 to affect favorably his application, the jury could infer entirely apart from the telephone conversation that defendant acted as a bagman for someone else when he accepted the $2,000 at midnight in the Rex Restaurant in February 1969.

*Admissibility of Grand Jury Testimony*

Defendant's testimony before the grand jury on August 21, 1973, was transcribed and consisted of 54 pages. Before the trial began, counsel for defendant and the Government agreed to numerous deletions in this testimony. Thus large portions of the transcript were deleted by agreement, including many whole pages. The court settled the questions of admissibility where the parties could not reach agreement. Defendant raised a uniform set of objections and asked that they be applied to each part of the transcript that he challenged. He argued that these portions of the transcript should not be admitted into evidence because they were irrelevant, immaterial and prejudicial to defendant. At the threshold of the trial and out of the presence of the jury, defense counsel made these objections to much of the non-deleted portions of the transcript, and the court sustained many of his objections, causing further deletions. The court agreed to treat defendant's objections as having been reiterated when the transcript was offered into evidence at trial.

■■ On appeal defendant belatedly argues that the portions of the transcript relevant to whether defendant's false declarations were "material" to the grand jury's investigation should not have been read to the jury. (See 18 U. S.C. § 1623(a), note 1, *supra.*) The apparent basis for this contention is the rule, well established in this Circuit, that the issue of materiality in a perjury charge is a question of law for the court. United States v. Rivera, 448 F.2d 757, 758 (7th Cir. 1971); United States v. Parker, 447 F.2d 826, 830 (7th Cir. 1971). However, at no point in the more than 60 transcript pages of colloquy between the court and counsel with relation to the proposed deletions did defendant's counsel suggest that the portions of the transcript relevant to materiality should be treated differently than other admissible portions. Indeed, at the outset of the colloquy he specifically

stated that the prosecutor might read to the jury those portions of the transcript that the court ruled admissible. In this posture, we cannot accept defendant's overdue argument that there were two kinds of admissible evidence, one for the court and jury and one for the court alone.

In Gebhard v. United States, 422 F.2d 281, 289 (9th Cir. 1970), the full transcript of defendant's testimony before the grand jury was admitted before the petit jury during his perjury trial. On review, the court concluded that there was merit in the Government's argument that "The full transcript was admissible to show the materiality of perjured testimony to the subject matter of the grand jury's investigation." 422 F. 2d at 289.[2] In this case, we need not and do not go so far as to adopt that holding as a general rule. We conclude only that the non-deleted portions of the transcript were admissible on the issue of materiality to the investigation and could, therefore, be read to the jury in the absence of any objection that they should have been considered only by the judge.

■ Moreover, even had the defendant properly requested that the judge alone inspect those portions of the transcript that bore on materiality, there were alternative grounds for allowing the jury to consider the unexcised portions. The transcripts read to the jury were admissible on several issues which were to be decided by the jury: whether the defendant "knowingly" made false declarations before the grand jury (note 1, *supra*) and, in accordance with the instructions, whether he "intentionally committed the act" because, again according to the charge, "The crime charged in this case requires proof of specific intent before the defendant can be convicted." Furthermore, the chal-

lenged portions bore on wilfulness, which was defined in another of the instructions given by the trial judge. Finally, in considering defendant's objections before trial, the court sustained those that it considered most prejudicial to defendant, despite their arguable materiality.

*Prosecutor's Alleged Comment on the Subject of Defendant's Taking the Stand*

■ During the testimony of FBI Agent Johnson, defense counsel made an objection and stated:

"This [testimony of Mr. Johnson] isn't impeaching of anything or anybody, or of the defense, or any testimony that the defendant has given."

Thereupon the prosecutor replied:

"Your Honor, we will wait until he [defendant] takes the stand to impeach him. It is not offered to impeach him. It is offered as part of the case in chief of the government."

Defense counsel made no objection to this remark. Not until 15 transcript pages later did he move for a mistrial on the ground of the prosecutor's comment. The Assistant United States Attorney explained that "It was an invited response," resulting in the denial of the motion for a mistrial. We agree with the Government that this remark did not constitute a comment on defendant's failure thus far to testify nor compel him to take the stand. There has been no showing whatever that this fleeting episode prompted defendant to testify. Therefore, since defendant has shown no prejudice from the prosecutor's remark, the trial court did not err in denying his motion for a mistrial.

*Cross-Examination of Boznos*

■ Defendant contends that the court unduly restricted his right to

---

2. In Richards v. United States, 329 F.2d 188, 190 (5th Cir. 1964), involving another perjury trial, the court held that certain testimony was admissible "to enable the trial court to determine the materiality of the false

statement." As here, there was apparently no request that such testimony be considered only by the trial court in making its materiality ruling.

cross-examine Boznos by sustaining an objection to the following question:

"Well, did you ever give any consideration and thought to going over to see [Austin Police District Commander] Mark Thanasouras about this?"

Defendant urges that the question should have been allowed in order to show that, since the two men knew each other well, Boznos would have dealt with Thanasouras directly rather than through defendant. The trial court was within its discretion in limiting the cross-examination by refusing this question because it was merely cumulative of prior testimony about the close relationship between Boznos and Thanasouras.

### Cross-Examination of Character Witness

██ During the trial defendant placed his character in issue and called witnesses to testify as to his good reputation. Defendant contends on appeal that a question put by the prosecutor during cross-examination of one of these witnesses caused such prejudice that a mistrial was required. Defendant's witness was asked:

"In your discussions with other persons about James Demopoulos, did you ever hear the discussion that he had been picked out while a spectator, as a defendant, in this building?"

The Government concedes that the question was irrelevant and improper. The question resulted in an objection that was immediately sustained. Then counsel for the Government withdrew the question, and the court instructed the jury to disregard it. In these circumstances, there was no measurable prejudice to defendant which would justify a new trial.

### Non-Compliance with Rule 30 of Federal Rules of Criminal Procedure

Defendant claims that reversal is required because of the court's violation of Rule 30 of the Federal Rules of Criminal Procedure.[3] Both sides tendered instructions to the court for its consideration. In accordance with his custom, the trial judge said that he would not hold a conference on instructions unless he wanted suggestions and comments from counsel, in which case he would inform them. He added:

"But I don't have conferences on instructions, especially where you quote the statute and so forth, or the law, upon which you are relying. Most of them are stock anyhow. There may be one or two where I will want to hear from you."

However, as the judge explained, he "carefully considered each written instruction as presented by counsel for the Government and for the defense, and the court caused each instruction to be marked either 'Given' or 'Refused', after full and complete research of the law pertaining to each instruction given."

After denying defendant's motion for acquittal, a 10-minute recess was given so that counsel could examine the instructions about to be given to the jury. Neither counsel requested additional time. After this recess, counsel made their respective arguments to the jury, and their arguments were followed by the charge.

After the charge was given and while the jury was deliberating, in the absence

---

3. Rule 30 provides:

"*Instructions.* At the close of the evidence or at such earlier time, during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. At the same time copies of such requests shall be furnished to adverse parties. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury and, on request of any party, out of the presence of the jury."

of the court and according to its then custom, defense counsel was permitted to present objections to the instructions. He noted on the record that this practice did not give the court the meaningful opportunity contemplated by Rule 30 for correcting any instructions to which objection had been made. After considering the objections, the court could have issued corrected instructions but did not choose to do so, thus overruling the objections *sub silentio*.

▆ We condemned this practice in United States v. Van Drunen, 501 F.2d 1393 (7th Cir. 1974), and have noted that it no longer prevails in trials conducted by this judge after July 24, 1974, when *Van Drunen* was decided. In United States v. Clay, 495 F.2d 700, 708–709 (7th Cir. 1974), we held that violations of Rule 30 that clearly do not result in prejudice to a defendant will not result in reversible error.[4] Three and one-half months after our decision in *Clay*, the Supreme Court, in Hamling v. United States, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590, specifically approved this approach to Rule 30 violations. The Court held that where it affirmatively appears that a defendant was not prejudiced by the violation reversal is not required. Consequently, we will examine the four instructions of which defendant complains and to which he was not permitted to make objection before the jury retired in order to decide whether it affirmatively appears from the record that the defendant was not prejudiced thereby.

*Propriety of Instructions*

▆ Initially, defendant complains of the giving of LaBuy Instruction 6.04 relating to circumstantial evidence (33 F.R.D. 523, 572–573). The objection below was that this instruction "contains an erroneous interpretation or description of what constitutes circumstantial evidence." No further elaboration was given. In this Court, defendant com-plains of the instruction on the ground that the only circumstantial evidence was in the telephone conversation received by Boznos from an anonymous caller requesting $5,000 in order to secure police approval of his liquor license. Since this testimony was not received in evidence as proof of the truth of the matter asserted, defendant argues that the Government should not have tendered this circumstantial evidence instruction. However, in his testimony, Crispino described the man he and Boznos met in the Rex Restaurant shortly after midnight in February 1969. This description tallied with the defendant's description of himself and was enough circumstantial evidence to warrant this stock instruction.

▆ Defendant next claims that the immunity instruction was unfair to defendant because it warned the jury only that "such testimony [of immunized witnesses] must be examined and weighed by the jury with greater care than the testimony of an ordinary witness." The jury was also instructed that in weighing the testimony of each witness it should consider his relationship to the Government or the defendant and any interest that he had in the outcome of the case. The jury charge also described the extent and scope of the immunity granted witnesses Boznos and Crispino under 18 U.S.C. § 6002. All this was equivalent to defendant's refused instruction L. Instruction L would have told the jury that the testimony of immunized witnesses "should be received with suspicion and considered and scrutinized with the very greatest of care and caution." The denial of this tendered instruction as repetitive of instructions given by the court was not prejudicial to defendant.

▆ Defendant also complains that the word "informer" should have been included in this immunity instruction. This was not one of the grounds of objections at the trial. Furthermore,

4. Accord, United States v. Schartner, 426 F.2d 470 (3d Cir. 1970); Lovely v. United States, 169 F.2d 386 (4th Cir. 1948).

Boznos and Crispino were not informers, for they testified only when ordered to do so under grants of use immunity. In closing this matter, we cannot fault the trial judge for the inclusion of the following sentence in the immunity instruction:

"However, the fact that this government witness was granted immunity also is not a justification under the law for your finding a defendant not guilty if you find that his guilt has been proven beyond a reasonable doubt from your consideration of the evidence."

 Defendant next complains of the parenthetical clause in the following sentence from the specific intent instruction which the court read to the jury:

"Such intent may be determined from all the facts and circumstances surrounding the case (and from similar prior crimes and transactions)."

The Government admits that the parenthetical matter was inadvertently included in the instruction it furnished to the trial court. No objection was made to this instruction, so that error may not be assigned under Rule 30. Furthermore, since no evidence had been presented of "similar prior crimes and transactions," the jury could not have been misled. Therefore this surplusage should not be considered plain error under Rule 52(b) and reversal is not required.

 The last instruction of which defendant complains relates to the telephone conversation between Boznos and an anonymous caller. The instruction read as follows:

"During the examination of the witness Peter Boznos, he testified concerning a phone conversation he had with an unknown individual from the Austin Police District. This conversation was admitted to allow you to understand subsequent actions which were taken by the witness Boznos and others. It was not offered for the truth of the matters contained in that phone conversation, and you are to consider that phone conversation only as it pertains to the subsequent actions of the witness Boznos and others, and you are not to consider it for the truth of anything, nor as proof of the matters asserted in that conversation."

Defendant argues that this instruction permitted the jury "to paint the conversation with the gilt of truth." To the contrary, the instruction reminded the jury that the telephone conversation was not offered for the truth of the matters therein. We disagree that this instruction "is the use of the telephone conversation, as truth, to corroborate the story of Boznos."

Therefore, since the record affirmatively shows that the defendant was not prejudiced by any of the instructions which he attacks, the violation of Rule 30 does not compel reversal here.

*Newly Discovered Evidence*

 Defendant argues that the trial court erred in denying his motion for a new trial based on allegedly newly discovered evidence. Defendant claims that after the trial was over, his trial counsel first learned of a document indicating that Police Commander Thanasouras approved Crispino's application for a liquor license on February 5, 1969. It is defendant's contention that this so-called newly discovered evidence would be crucial to his defense because it indicates that the bribe was intended to secure an approval that had already been given, thereby raising doubt about the testimony of the Government's key witnesses. In truth, the document was shown to defendant's then counsel by the prosecutors and offered for copying two months prior to trial and was previously subpoenaed and received by him on January 31, 1974, the day before it was shown to him by government counsel. Therefore, it cannot be considered as newly discovered evidence. Moreover, such evidence, even if truly newly discovered, would not require the district judge to grant a new trial because he

could reasonably conclude that its probable effect in a new trial would not be to change the result. United States v. Balistrieri, 436 F.2d 1212, 1215 (7th Cir. 1971), certiorari denied, 402 U.S. 953, 91 S.Ct. 1620, 29 L.Ed.2d 124. Where the license was not finally approved until February 26, 1969, and a police investigation of Crispino in Thanasouras' district was not completed until some time after February 5, 1969, it is reasonable to conclude that Thanasouras, despite his earlier formal approval, could have adversely influenced the granting of the license up to the time that Crispino actually received it. No new trial was required.

*Attitude of the Trial Court*

██ Finally, defendant complains that the court's "anger," expressed during defendant's cross-examination, prejudiced the jury against him. The challenged remark of the court occurred after the witness interrupted the judge and read as follows:

"Now, just a minute. You are on the witness stand, and don't you forget it. You are not in the well of this court, and you'll take the advice of [your] counsel [not to volunteer anything], if you haven't up till now."

The court then explained that it did not want defendant to interrupt and start volunteering after his own counsel had admonished him not to volunteer. After the witness apologized, the court did likewise, and, before the afternoon session began, instructed the jury as follows:

"You should not, by the tone of my voice, nor by any gesture on my part, interpret that as the court having any opinion on the guilt or innocence of this defendant. My sole venture, my sole mission here is to preside so that this defendant obtains a fair trial, and the government obtains a fair trial, and that is all. I have no interest whatsoever in the outcome of this lawsuit."

In view of this cautionary instruction and the court's own prior apology, this incident certainly did not deprive defendant of a fair trial.

The judgment of conviction is affirmed.

PELL, Circuit Judge (dissenting).

While the majority opinion is persuasively written, I am unable to dispel an opinion that the cumulative effect of the various matters raised by the appellant was such as to deprive him of a fair trial. Accordingly, I respectfully dissent.

Since, however, the determination of whether the combination of several incidents creates a sufficiently unfair trial as to call for reversal is essentially a balancing process with judgmental analysis being involved, I shall direct my attention primarily to two aspects of this trial which when taken together, and I do not believe they can be considered separately, deprived Demopoulos of a fair trial.

The two are: (1) the improper question put to a character witness saying in effect to the jury that Demopoulos had been previously picked out as a defendant in another courtroom in the federal court house building; and (2) the subsequent instruction indicating that a finding that the defendant had the requisite specific intent could be based upon his having been involved in similar prior crimes and transactions. The other trial incidents complained of, of course, when added to this base merely strengthen the necessity for a new trial.

The error of the instruction, tendered by the government and given by the court, cannot be viewed in a noncontextual vacuum. It is not disputed that there was no evidence of similar prior crimes and transactions but the entire tenor of the trial of the case, tried as it was during a period of widespread newspaper publicity in Chicago concerning scandals in the police department, was strongly suggestive to the jury that the defendant Demopoulos was a part of those transactions. Particularly, the reference to prior criminal transactions was given further significance in the

eyes of the jury because of the question put to the character witness indicating that Demopoulos "had been picked out while a spectator, as a defendant, in this building?"

I do not deem that there was any adequate cautionary instruction to remove from the jury's mind this reference to the defendant being identified as a defendant in another case in the same courthouse when taken in juxtaposition with the instruction with regard to specific intent. Counsel objected to the question to the character witness and the objection was sustained. Counsel then moved that the jury be instructed to disregard that completely. Only after the prosecuting attorney withdrew the question did the court advert further to the clearly improper question and then merely stated, "[c]ounsel for the government will withdraw the question, and the court instructs the jury to disregard the asking of that question." This conveyed nothing more to the jury than the fact that since the question had been withdrawn they should pay no attention to it. There was no admonition specifically directed to the matter of not giving any consideration to the fact, or the impropriety of disclosing, that Demopoulos had been picked out as a defendant in another case.

The error is made more serious by the fact that the incident involved a case of mistaken identification.

I fail to comprehend how the jury could not have been misled by the reference to "similar prior crimes and transactions" since no evidence had been presented in this regard. The very fact of lack of evidence has long been deemed a highly cogent reason for elimination or preclusion of reference in an instruction.

Thus, in United States v. Breitling, 61 U.S. 252, 254–255, 15 L.Ed. 900 (1858), Mr. Chief Justice Taney stated:

"It is clearly error in a court to charge a jury upon a supposed or conjectural state of facts, of which no evidence has been offered. The instruc-

tion presupposes that there is some evidence before the jury which they may think sufficient to establish the facts hypothetically assumed in the opinion of the court; and if there is no evidence which they have a right to consider, then the charge does not aid them in coming to correct conclusions, but its tendency is to embarrass and mislead them. It may induce them to indulge in conjectures, instead of weighing the testimony."

The converse of the present rule is the well-settled rule in criminal cases that if there is no evidence to support a particular defense, the trial judge is justified in refusing to submit such defense to the jury. United States v. Gosser, 339 F.2d 102, 109 (6th Cir. 1964), cert. denied, 382 U.S. 819, 86 S.Ct. 44, 15 L.Ed. 2d 66. No more, however, should there be an instruction given as to which there is no supportive evidence.

In United States v. Collier, 313 F.2d 157, 159 (7th Cir. 1963), cert. denied, 374 U.S. 844, 83 S.Ct. 1900, 10 L.Ed.2d 1064, this court held erroneous an instruction explaining the term "special employee" because there was no basis in the evidence and another instruction which assumed, "with no proof of the fact, that defendant was ready, willing and able to commit the offense charged."

The mere implication of unlawful conduct other than that charged against a defendant is ground for reversal. In United States v. Leggett, 312 F.2d 566, 574 (4th Cir. 1962), the only issue was whether the defendant had represented himself to be an F.B.I. agent. The Government in presenting its case claimed he was not even licensed as a private investigator. The trial court in referring to this contention, charged the jury in part:

"And had no right therefore to seek information concerning the registration of any guests they had and that at the most he was a trespasser."

In reversing, the court stated:

"If he had been an invited and welcome guest it would have made no dif-

ference. 'Trespass' signifies a transgression or wrongful act, Nolan v. New York N. H. &. H. R. Co., 70 Conn. 159, 39 A. 115, 43 L.R.A. 305; and this is particularly true in the minds of laymen, unacquainted with the niceties of legal definitions. The facts of this case did not justify applying the term 'trespasser' to the appellant and its use may well have led the jury to infer that the appellant committed a crime just by going to the motel. It certainly tended to divert them from the real and sole issue in the case."

The mere inclusion of the words "assaults any person" in an instruction dealing with a Count of an indictment which did not charge an assault, although the section of the statute on which the Count was based did include "assaults any person," was deemed serious enough error to require reversal "and so clear that appellant is not precluded from raising it here notwithstanding that he failed to object to that charge below." United States v. Roach, 321 F.2d 1, 4 (3d Cir. 1963).

While ordinarily an incorrect instruction if favorable to the defendant will not be deemed prejudicial to him, "[w]hen a false issue of magnitude sufficient to nullify proper consideration of the issues is inserted into a case [by instructions], the proper administration of justice is thwarted and a conviction so based cannot stand." Michaud v. United States, 350 F.2d 131, 133–134 (10th Cir. 1965). There the court held that the inclusion of a false issue in the case was plain error under Rule 52(b), Fed.R. Crim.P., requiring reversal. In the case before us the trial court interjected, albeit inadvertently but nevertheless patently there, an extraneous issue of law. "Extraneous *law* may be quite as prejudicial as extraneous *facts*. Verdicts should be based only on the evidence in the case and the pertinent law as applied to that evidence." United States v. Hill, 417 F.2d 279, 281 (5th Cir. 1969).

In Morris v. United States, 326 F.2d 192, 195 (9th Cir. 1963), the district court gave an instruction that flight or concealment immediately after the commission of a crime may be considered as a fact hearing on guilt just as in the case at bar prior similar crimes or transactions could be considered as bearing upon the existence of specific intent. In *Morris*, there was no evidence that the defendant had fled or concealed himself. Here there was no evidence of prior similar crimes. In *Morris*, "the danger that the jury might have been led to indulge in conjecture" was heightened by a testimonial reference to the defendant as a fugitive. In the present case, the danger of jury conjecture was heightened by the reference (in the improper question during testimony) to Demopoulos having been picked out as a defendant in another case. In *Morris*, there was a reversal. There should be here.

The prejudice of the unremoved reference to criminal identification plus the erroneous instruction was made more stringent in impact in the present case by the fact that the basic question presented to the jury was to decide as a matter of credibility whether to believe Boznos who identified the defendant as the person to whom the money was paid or whether to believe the defendant who took the stand and denied any participation. The only other eye witness to the transaction was unable to identify Demopoulos in the courtroom. On the one-to-one basis presented to the jury, it is impossible to say that the scales-tipping feather was not the false criminality issue introduced and it is no answer to say that the introduction of the false issue was inadvertent. Also other factors here must be considered as further denigrating the defendant's credibility, such as the trial court's rebuke of the defendant as a witness.

It is true, of course, that a proper objection was not made to the instruction. However, in the highly improper way in which the matter of instructions was handled the lack of objection is not surprising. It helps Demopoulos's miscarriage of justice very little that the

district court judge is no longer following the cursory procedure utilized in the present case. With further reference to the nature of the attention given to the matter of instructions, it is noted that the defendant tendered some 25 instructions, each of which, according to the trial judge, he had carefully considered and had marked "Given" or "Refused." Yet, every instruction tendered by the defendant was refused with a notation in each case that it was repetitive or argumentative or both. Perhaps most of the tendered instructions were covered by those given by the court; however, a careful examination would have reflected that defendant's instruction Q was verbatim with that given by the court with the exception of the added crucial words "and from similar prior crimes and transactions."

With regard to the other contentions raised by the defendant, I emerge from an examination of the record with the distinctly uncomfortable feeling that somewhere along the line sight was lost of the sole issue which was supposedly being tried and that was whether Demopoulos falsely denied to a grand jury that he had picked up a package of money in February 1969 at a specified restaurant in Chicago from one of two named individuals. This was not a trial of an obstruction of justice charge nor a bribery case, nor even a disbarment proceeding. Although the parties stipulated facts prior to the trial which rather clearly demonstrated the materiality of the challenged grand jury testimony and although the court treated the materiality determination as being for the court and not the jury, nevertheless substantial portions of the grand jury testimony went before the trial jury as to occurrences both before and after the supposed restaurant meeting.

Finally, in viewing the record as a whole, I find myself disturbed by the frequency with which resort has had to be taken to cautionary instructions to save the fairness of the trial. Under the circumstances of this case, Mr. Justice Jackson's often quoted words in his concurring opinion in Krulewitch v. United States, 336 U.S. 440, 453, 69 S. Ct. 716, 723, 93 L.Ed. 790 (1949), are particularly apt: "The naive assumption that prejudicial effects can be overcome by instructions to the jury . . . all practicing lawyers know to be unmitigated fiction."

For the reasons set out hereinbefore, I would reverse and remand for a new trial.