Charles GROVE, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 4–182A6.

Court of Appeals of Indiana,
Fourth District.

June 9, 1983.

Susan K. Carpenter, Public Defender of Ind., David P. Freund, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen. of Ind., Lee Cloyd, Deputy Atty. Gen., Indianapolis, for appellee.

MILLER, Judge.

Charles ("Buddy") Grove appeals after a jury found him guilty of theft (a class D felony, Ind.Code 35–43–4–2(a)). He was accused of stealing porch furniture and delivering it to an auction house where it was later sold along with other of his furniture. Thereafter, he cashed a check received from the auction house. On appeal, he raises five issues, claiming the trial court erred:

1. in permitting Joe Mahfouz, owner of the auction house, to testify regarding telephone calls which he received from "Buddy Groves";

2. in not instructing the jury as to the limited purpose for which Mahfouz's testimony could be used;

3. in admitting an exhibit, the check from the auction house, which was not listed in the State's pre-trial list of witnesses and exhibits;

4. in refusing to strike rebuttal testimony of Grove's reputation offered through prosecution witnesses Wayne Thompson and Robert Clements;

5. in sustaining the verdict when there was insufficient evidence to support the conviction.

For the reasons stated below, we affirm.

### FACTS

Sometime during the early morning hours of September 1, 1980, two pieces of wicker porch furniture (a settee and chair) disappeared from the home of Hazel Gilmore in Parker City, Indiana. Gilmore reported the loss to Rex Amburn, the town marshal, who, two days later, received an anonymous phone call advising him the missing furniture could be found at Mahfouz's Auction Company, located near Muncie, Indiana, about ten miles away. Amburn and Deputy Marshal Ed Fodrea investigated and found Gilmore's settee and chair at the auction house. They then confiscated the furniture and returned it to Gilmore. The furniture had been marked as Lot No. 112 by the auction company, a designation which corresponded to a consignment check-in sheet which listed Buddy Grove, 432 S. Franklin, Parker, Indiana, as seller. Grove was then arrested and charged with theft.

At trial, Joe Mahfouz, proprietor of the auction house, testified that a person identifying himself as "Buddy Groves" had called Mahfouz at his home early on the morning of September 1, 1980, indicating that he had some furniture he wished to consign for sale at an auction to be held that evening.

The caller stated he was leaving town for the day and needed to drop off the furniture before leaving. Mahfouz informed the caller that his business did not open until noon, but told him to leave the furniture in a dump truck parked outside the auction house. Mahfouz had never spoken with Grove previously and identified the caller only from the statement of his name in the phone conversation. That afternoon, Mahfouz found the wicker lawn furniture, which was later identified as Gilmore's, placed in the dump truck. He ordered his employees to remove the furniture from the truck and prepare it for auction sale that evening.

Leo Beechboard, Sr., a Mahfouz employee, testified that a Buddy Grove had brought a lo-boy dresser into the auction company on August 28, 1980, for sale at Mahfouz's September 1, 1980, auction and had told Beechboard, Sr. he would bring more furniture for the sale later. A consignment sheet was filled out listing the dresser. Mahfouz told his employees of the call from "Buddy Groves," and the wicker furniture found on the dump truck was included on Grove's previous consignment sheet and sold at auction, bringing a price of $102.50.

The day following the sale, Mahfouz received a phone call from a person who again identified himself as "Buddy Groves," who inquired as to how much the furniture had brought. Mahfouz told him the amount and indicated Grove could pick up his check. Mahfouz then prepared an envelope containing Grove's check and a copy of the consignment sheet and gave it to another employee, Leo Beechboard, Jr. for delivery. Beechboard, Jr. testified he received a phone call September 3, 1980, from a person identifying himself as Buddy Grove, who told Beechboard to mail the check. Beechboard, Jr. then wrote the Parker, Indiana address from the consignment sheet on the letter but found he lacked the correct zip code. He then called the number on the sheet, asked for Grove, was given the zip code by a person identifying himself as Grove, and mailed the check and the consignment sheet itemizing the property.

Karen Six, a teller at the Parker Banking Company in Parker City, testified Buddy Grove, whom she identified as the defendant, cashed Check No. 1023 from the Mahfouz Auction Company on September 4, 1980, and received $108.* Deputy Marshal Fodrea also testified that during the course of his patrol on September 1, 1980, he spoke with Grove and two others about 2:30 A.M. At that time, Grove and his friends were in a pick-up truck parked in front of a residence located two houses away from Hazel Gilmore's home.

Grove presented an alibi defense, urging that he had stayed out all night with friends on August 31, 1980, and had left for King's Island amusement part in Cincinnati, Ohio early on the morning of September 1, 1980. He denied stealing Gilmore's furniture or calling Mahfouz, although he admitted he wrongfully cashed a check from Mahfouz's Auction Company which he was aware was made out in an amount greater than he had earned from the sale of the lo-boy dresser he had brought in for the auction. Grove said he had cashed the check made out for the larger amount because he needed the money to pay a debt.

## DECISION

*Issue One—Mahfouz's Testimony Regarding Phone Calls*

■ Grove contends the trial court erred in allowing Joe Mahfouz, owner of Mahfouz's Auction House, to testify regarding the phone calls he received September 1, 1980, and September 2, 1980, from a person identifying himself as "Buddy Groves." At trial, Grove objected to Mahfouz's testimony as unauthenticated and hearsay. The State urged that the conversations were being offered to set the stage for later testimony. The trial court agreed and also noted the conversation could be part of the *modus operandi.* On appeal, Grove asserts that Mahfouz's inability to identify the caller by other means than the caller's statement he was "Buddy Groves" rendered the calls inadmissible. He also argues the ad-

mission of the conversations to set the stage for later testimony was improper, urging the only possible relevance of the calls was to prove that the caller was indeed Grove.

We disagree and conclude the conversations were admissible to provide the background facts surrounding the sale of Gilmore's furniture, to explain the subsequent acts of Mahfouz's employees in placing the stolen furniture on the consignment sheet assigned to Grove and to give legal significance to the knowledge of Grove of items sold in his name for which he accepted payment. *See Kolb v. State,* (1972) 258 Ind. 469, 282 N.E.2d 541 (contents of threatening phone call admitted to show witness was placed in fear and circumstances involved); *U.S. v. Hickman,* (7th Cir.1970) 426 F.2d 515 *cert. denied,* 402 U.S. 966, 91 S.Ct. 1632, 29 L.Ed.2d 130 (1971) (contents of telephone conversation admissible to explain why federal agents were watching certain Gary, Indiana, restaurant); *U.S. v. Demopoulos,* (7th Cir.1974) 506 F.2d 1171 *cert. denied,* 420 U.S. 991, 95 S.Ct. 1427, 43 L.Ed.2d 673 (1975) (telephone conversation admitted for limited purpose of providing background operative facts to show reason for subsequent acts of witnesses).

Thus, inasmuch as Mahfouz's testimony regarding the telephone conversations was not offered to evidence the truth of the matter contained therein, the hearsay rule was inapplicable and the evidence was properly admitted.

*Issue Two—Limiting Instruction*

■ Grove alleges the trial court erred by not giving the jury a cautionary instruction as to the limited purpose for which Mahfouz's testimony could be used though he admits he did not tender such instruction to the court. At trial, Grove orally requested the court to give "a precautionary instruction as to what [Mahfouz's] testimony was being used for." However, he neither tendered such instruction nor made any proposal as to its contents. He also made no objection to the court's final instructions

---

* The $108.00 figure represented the proceeds from the sale of the lo-boy and the wicker

furniture ($135), less Mahfouz's 20% selling commission.

which did not include any precaution regarding the consideration of Mahfouz's testimony. In his appellate brief, Grove admits his failure to tender such limiting instruction but insists the tender would have been useless in light of the court's action on his oral request. He also argues in his reply brief that the requirement of a written tendered instruction should not apply to cautionary instructions limiting the use of testimony although he concedes

> "prudent counsel who wished to be totally sure of protecting his [r]ecord would probably want to not only ask for an oral limiting instruction to the jury at the time the evidence was admitted, but also tender a written instruction to be read to the jury in the final charge." (Reply brief, p. 8).

Our supreme court has frequently held that the failure to tender a written instruction waives any alleged error in the failure to give a requested instruction. *Begley v. State,* (1981) Ind., 416 N.E.2d 824; *Miller v. State,* (1978) 267 Ind. 635, 372 N.E.2d 1168. In *Miller, supra,* as in the case before us, the defendant made an oral request but did not tender the requested instruction to the court. In addressing the defendant's claim of error in the omission of the instruction, our supreme court said:

> "This court has previously held that if a party requests the court to instruct the jury, such instruction should be tendered in writing. Failure to tender an instruction in writing waives the error, if any, of not giving the requested instruction. (Citations omitted.) In addition, Ind.R. Ap.P. 8.3(A)(7) provides that:
>
>> 'When error is predicated on the giving or refusing of any instruction, the instruction shall be set out verbatim in the argument section of the brief with the verbatim objections, if any, made thereto. Any error alleged in the motion to correct errors not treated as herein directed shall be deemed waived.'
>
> Consequently, if a requested instruction is neither tendered in writing to the trial court nor specifically set out in the argu-

ment section of the appellant's brief, the alleged error by the court in not giving the instruction is waived.

> Appellant relies on Ind.Code § 35-1-35-1 (Burns 1975) which provides that:
>
>> 'In charging the jury the court must state to them all matters of law which are necessary for their information in giving their verdict.'
>
> However, this does not relieve appellant from tendering the desired instruction when the court has not instructed as fully as the appellant desired. Appellant cannot remain quiet after knowing the court has omitted an instruction and afterward claim error. *Barker v. State,* (1957) 238 Ind. 271, 150 N.E.2d 680. Since there is nothing in the record indicating the appellant tendered any instruction nor was it properly set out in his brief, the alleged error in not giving an instruction on lesser included offenses is waived."

*Id.* at 641–42, 372 N.E.2d at 1171–72.

While Grove urges a different rule should apply to cautionary instructions limiting the purpose of evidence, he fails to cite any case or statutory authority for this proposition. Our supreme court spoke to this issue in *Hengstler v. State,* (1934) 207 Ind. 28, 189 N.E. 623, when it instructed:

> "Appellant also complains that this instruction admonished the jury to consider all of the testimony introduced in the case, and to determine therefrom the guilt or innocence of the defendant, that there was evidence directed to the credibility of witnesses, and that the court gave no instruction limiting this class of evidence to its proper use. *If appellant wished such an instruction he should have tendered it.*" (Emphasis added.)

*Id.* at 35, 189 N.E. at 626. *See also Harden v. State,* (1982) Ind., 441 N.E.2d 215 (defendant waived issue of court's failure to give cautionary instruction regarding accomplice testimony when he failed to tender correct instruction). Thus, though Grove might have been entitled to such instruction upon proper request, his failure to tender a correct instruction in writing waives any alleged error. *Id.; Clemons v. State,* (1981)

Ind., 424 N.E.2d 113; *Roberts v. State,* (1981) Ind.App., 419 N.E.2d 803.

*Issue Three—Admission of Exhibit Not on Pre-Trial List*

Grove asserts the trial court abused its discretion in admitting a check from Mahfouz Auction Company which Grove cashed at the Parker Banking Company. The check did not appear on the State's pre-trial list of exhibits. However, Karen Six, the Parker Banking Company teller, was listed as a potential witness and in an affidavit accompanying the motion to correct errors, Grove's counsel admitted the State showed him a photocopy of the check on June 24, 1981, five days before trial. At trial, Grove objected to the check's admission but did not move for a continuance. In his motion to correct errors, he specifically excludes any contention of bad faith or wrongful intent on the part of the State but insists exclusion of the exhibit was proper in light of the State's failure to include it on the pre-trial list.

■ When the State fails to disclose all pertinent information prior to trial, the defendant may either move for a continuance or for exclusion of the evidence. *Murray v. State,* (1982) Ind., 442 N.E.2d 1012; *Chandler v. State,* (1981) Ind., 419 N.E.2d 142. While a continuance is usually the proper remedy for a failure to disclose, exclusion may be warranted where the State has made a flagrant and deliberate refusal to comply with discovery. *Murray v. State, supra; Riley v. State,* (1982) Ind., 432 N.E.2d 15; *Carson v. State,* (1979) Ind., 391 N.E.2d 600. What, if any, corrective measures are needed is to be determined by the trial court in an exercise of its discretion and absent a showing of clear error and resulting prejudice to defendant, its ruling will not be overturned on appeal. *Adams v. State,* (1982) Ind., 442 N.E.2d 1134; *Murray v. State, supra.* Further, failure to request a continuance may result in a waiver of any alleged error. *Adams v. State, supra.*

■ Here, Grove did not move for a continuance. He makes no claim of surprise in the admission of the exhibit and indeed,

admits he was given an opportunity to examine the check five days before trial. The exhibit is merely corroborative of Six's testimony concerning Grove's cashing of the check, and no bad faith is claimed or evidenced in the State's actions. In light of Grove's failure to move for continuance and in consideration of the cumulative nature of the exhibit, we can find no error in its admission. *Murray v. State, supra.*

*Issue Four—Impeachment Testimony*

■ Grove contends the trial court erred in refusing to strike certain impeachment testimony offered through prosecution witnesses Wayne Thompson and Robert Clements. Grove had testified in his own behalf, and these witnesses were called to establish his bad reputation. Thompson testified he had worked in the insurance business in Parker City since 1966, he was acquainted with Grove, and his general reputation for truth and veracity was bad. On cross-examination, Thompson stated his opinion was based on "personal experience, mostly." He also stated he had spoken with several people, and while he could not name them all, he estimated he had conversations about Grove's truthfulness with about fifty per cent of the population of Parker City, specifying two individuals, Acil Garringer and Larry New, as among the people he had spoken with regarding Grove. The State's second impeachment witness, Robert Clements, testified he had lived in Parker City for eight to ten years and had been on the Town Board there for four to five years. He stated he knew Grove personally as well as his reputation for truthfulness, which was not good. On cross-examination, he said he had spoken with numerous people and specified Ed Fodrea, Rex Amburn and Jane Sites as people who had expressed their opinion to him as to Grove's untrustworthiness. Grove moved to strike both Thompson's and Clement's testimony, arguing Thompson's testimony was based on personal experience and Clement's testimony was merely a statement of other's opinions. The court refused to strike the testimony, which Grove now asserts as error on

appeal, relying on *City of South Bend v. Turner,* (1904) 163 Ind. 194, 71 N.E. 657.

In *City of South Bend,* our supreme court struck testimony offered to impeach a witness after it was revealed that the person who had testified the witness's general reputation for morality was bad: 1) was not acquainted with the witness, 2) knew of the witness's reputation only from statements made by one person, and 3) never heard any other person make any charges against the witness. The situation in *City of South Bend* is quite different from that of the instant case, where the testimony of both of the impeaching witnesses revealed they had lived in the same small town as Grove for a number of years and were personally acquainted with him and his reputation. Furthermore, both witnesses stated they had spoken to others in the town regarding Grove's trustworthiness (Thompson—fifty percent of the town's population; Clements—numerous people), and each was able to specify several of the persons with whom they had spoken. Our supreme court recently had opportunity to clarify the *City of South Bend* opinion in *Head v. State,* (1982) Ind., 443 N.E.2d 44, where a criminal defendant complained of the impeachment of one of his alibi witnesses by a person who was not personally acquainted with the witness sought to be impeached. In responding to his argument, our supreme court instructed:

"the admissibility of the reputation evidence is dependent upon whether the impeaching witness has knowledge of the general reputation for veracity of the witness to be impeached. The rationale for admitting such evidence is that it represents not a personal opinion based on a single incident or instance of human interaction, but rather that it represents the distillation of a community of opinions. *Meyncke v. State,* (1879) 68 Ind. 401; *see also,* 3A Wigmore on Evidence § 920 et seq. (Chad.rev.1970). In *City of South Bend v. Turner, supra,* this Court merely held that a person who had no knowledge of a witness except what one person had said about the witness was not qualified to testify concerning the character of the witness. Our holding was based on the fact that the evidence offered did not represent the distillation of numerous opinions, but rather the opinion of one person repeated second-hand."

443 N.E.2d at 59.

Returning to the case at bar, we do not believe the admissibility of Thompson's and Clement's testimony is necessarily dependent upon their ability to recite exact details of conversations they carried on with other Parker City residents regarding Grove's reputation. Our review of the entire testimony given by these two witnesses convinces us their statements as to Grove's reputation represent "the distillation of numerous opinions," rather than an individual opinion based on personal experience or a mere repetition of another person's opinion as claimed by Grove. The number and specificity of the conversations the witnesses were able to recount went to the weight of the impeaching evidence rather than its admissibility.

*Issue Five—Sufficiency of the Evidence*

Grove's final allegation of error concerns the sufficiency of the evidence to support his conviction. Grove asserts the State did not prove he took Gilmore's furniture and left it at the auction house but instead showed only that he had an opportunity to commit the crime. We disagree.

Viewed most favorably to the State, the evidence discloses Grove and two companions were seen in a pick-up truck in Gilmore's neighborhood during the period of time the theft was likely to have been committed. On the morning the theft was discovered, Joe Mahfouz, the proprietor of a nearby auction house, received a telephone call from a person identifying himself as "Buddy Groves," who arranged to drop off furniture for sale that evening. The caller was told to leave the items in a dump truck near the auction house and Gilmore's furniture was found there that afternoon. It was added to a consignment sheet filled out for Grove, who had earlier delivered a dresser for that sale, stating more furniture

would be brought later. Soon after the sale, Grove received a check and a copy of a consignment sheet which showed the amount received represented payment for the sale of Gilmore's furniture as well as the sale of Grove's dresser.

The trier of fact may draw reasonable inferences from facts established either by direct or circumstantial evidence. *Turpin v. State,* (1982) Ind., 435 N.E.2d 1, and a guilty verdict may be based solely on circumstantial evidence. *Id., Rowan v. State,* (1982) Ind., 431 N.E.2d 805. As an appellate court, we are not required to find that every reasonable hypothesis of innocence has been overcome but need only conclude that an inference reasonably tending to support the finding of the defendant's guilt can be drawn from the evidence presented. *Armstrong v. State,* (1982) Ind., 429 N.E.2d 647; *Browder v. State,* (1982) Ind.App., 431 N.E.2d 169.

Grove argues that Mahfouz's testimony regarding the phone calls he received from a "Buddy Groves" may not be used to sustain the verdict. However, as we noted in our previous discussion of Issues One and Two, Grove failed to tender any instruction limiting the purpose of the evidence. It was clearly his duty to do so. Where a jury receives no limiting instruction as to the purpose of the evidence, the law is clear that the evidence was available for consideration for all purposes, *see Franklin v. Duckworth,* (N.D.Ind.1982) 530 F.Supp. 1315; *Turentine v. State,* (1979) 179 Ind. App. 161, 384 N.E.2d 1119. Thus, here the contents of the telephone conversation, although hearsay, might properly be considered, and, together with the other evidence, gives rise to a strong inference that it was Grove who placed the call to Mahfouz and then left Gilmore's furniture on the dump-truck.

Even if the telephone conversation were not admitted, however, we could still uphold Grove's conviction based on 1) the fact that Grove was seen in Gilmore's neighborhood near the probable time of the theft, 2) the assignment of Gilmore's furniture to Grove's lot number for sale and 3) Grove's subsequent cashing of the check representing payment for Gilmore's furniture.

Affirmed.

CONOVER, J., concurs.

RATLIFF, J., sitting by designation, concurs.