UNITED STATES of America, Plaintiff-Appellee,

v.

Saul KOPEL, Defendant-Appellant.

No. 76–1601.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 6, 1976.

Decided April 19, 1977.

Rehearing and Rehearing En Banc Denied June 15, 1977.

**1268**

Patrick A. Tuite, Allan A. Ackerman, Chicago, Ill., for defendant-appellant.

Samuel K. Skinner, U.S. Atty., Robert T. McAllister, Asst. U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before SWYGERT, PELL and WOOD, Circuit Judges.

PELL, Circuit Judge.

On January 8, 1976, a four count indictment was returned against the appellant. Count I of that indictment charged that the appellant had wrongfully used his position as a Chicago police officer to unlawfully obtain from a retail liquor dealer various sums of money, in violation of 18 U.S.C. § 1951. Count II charged that the appellant had extorted money from another retail liquor dealer in violation of 18 U.S.C. § 1951.[1] Count III charged that, on March 1, 1972, the appellant had knowingly made false material declarations while under oath as a witness before the Special February 1971 Grand Jury, in violation of 18 U.S.C. § 1623. Count IV charged that, on January

29, 1975, the appellant had knowingly made false material declarations while under oath as a witness before the Special March 1974 Grand Jury, in violation of 18 U.S.C. § 1623.

Following a jury trial, the defendant was convicted on one count of extortion and on both perjury counts. He received an 18-month sentence on Count I, and concurrent sentences of 9 months each on Counts III and IV, the latter to run consecutive to the sentence on the extortion count. On appeal, the appellant challenges the use of his grand jury testimony, asserts impermissible joinder of separate and distinct extortion charges with separate and distinct perjury charges, claims the denial of his Sixth Amendment right to a speedy trial, and contends that the evidence to support the conviction was insufficient.

### I. Use of Grand Jury Transcripts

The defendant contends that the trial court committed prejudicial and reversible error in allowing the reading into evidence of his grand jury testimony and in allowing a transcript of that testimony to be taken to the jury room as an exhibit. The portion of the grand jury transcript admitted into evidence reflected the facts that Kopel was the subject of investigation, that he was given full *Miranda* warnings, and that he consulted with his attorney prior to answering the crucial questions which were the subject of the perjury counts. At trial, the defendant objected that the transcripts included two requests to go out to talk to his attorney, and that the matters relating to Kopel's consulting with his attorney were neither relevant nor material. Under Fed. R.Evid. 103(a)(1),[2] the defendant has preserved for review only the question relating to consultation with counsel.

The trial record contains the following portions of the grand jury transcript of January 29, 1975:

> Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and (1) . . . a timely objection or motion to strike appears of record, stating the specific ground of objection . . . . .

---

1. The defendant-appellant was acquitted on this count.

2. Fed.R.Evid. 103(a)(1), in pertinent part, provides:

BY MR. MULLEN [Assistant United States Attorney]:

\* \* \* \* \* \* \*

Q I want you to know that if you feel the need to consult with your attorney at any time today, you need only indicate that desire and I will ask the Foreman to excuse you for that purpose. Do you understand that, sir?

A Yes, sir.

\* \* \* \* \* \*

Q Other than crippled children and boy scouts, retirement parties, promotional events, have you ever received any money from any taverns or any retail liquor distributors in the Seventh Police District?

\* \* \* \* \* \*

BY MR. MULLEN:

Q Would you read back again the pending question. Listen very carefully, Mr. Kopel and indicate whether you understand that question.

\* \* \* \* \* \*

[Question read.]

BY THE WITNESS:

A Can I speak to my attorney for a moment?

BY MR. MULLEN:

Q Certainly.

THE FOREMAN: You may be excused.

\* \* \* \* \* \*

MR. MULLEN: Let the record reflect that Mr. Kopel left the Grand Jury Room and returned for the purpose of consulting with his attorney.

BY MR. MULLEN:

Q Do you recall the pending question, sir?

A Yes, sir.

Q Would you answer it, please?

A Other than pensions, retirement parties, social events, promotional and other fund raising events, I did not accept any monies or gratuities from any liquor establishments or taverns.

\* \* \* \* \* \*

Q Did you ever receive any monies from any business establishment in connection with your police duties or another policeman's official duties?

A Will you have her repeat that? (The question was read back by the court reporter as follows:

"Q Did you ever receive any monies from any business establishment in connection with your police duties or another policeman's official duties?")

BY THE WITNESS:

A Could you be a little more specific.

BY MR. MULLEN:

Q No, do you understand the question?

A No, I don't.

Q Would you want to consult with your attorney?

A Yes, please.

THE FOREMAN: You may be excused.

\* \* \* \* \* \*

MR. MULLEN: May the record reflect that Mr. Kopel left and returned to the Grand Jury Room for the purpose of consulting with his attorney.

BY MR. MULLEN:

Q Do you recall the pending question, sir?

A Yes, sir.

Q Would you answer that question.

A My answer is, none that I recall.

Essentially, the issue is the extent to which this court will follow the holding of *Gebhard v. United States*, 422 F.2d 281, 289 (9th Cir. 1970). In that case, the full transcript of the defendant's testimony before the grand jury was admitted before the petit jury during his perjury trial. On review the court concluded that there was merit in the Government's argument that the full transcript was admissible to show the materiality of perjured testimony to the subject matter of the grand jury's investigation. *Id.* at 289. In *United States v. Demopoulos*, 506 F.2d 1171, 1177 (7th Cir. 1974), *cert. denied*, 420 U.S. 991, 95 S.Ct. 1427, 43 L.Ed.2d 673 (1975), this court determined that it was unnecessary to adopt that

holding as a general rule but concluded that the non-deleted portions of the transcript there in issue were admissible on the issue of materiality and could be read to the jury in the absence of any objection that they should have been considered only by the judge. Moreover, we concluded that the unexcised portions bore on the issues of knowledge and wilfulness, so that alternative grounds existed for allowing the jury to consider the challenged portions. *See id.*

The defendant contends that by in effect inviting the jury to speculate on the reason that Kopel consulted with his attorney, the Government prejudiced and misled the jury. Noting that Kopel had received governmental assurances that he had a right to attorney consultation, the defendant argues that the prosecutor may not then "turn the table" and present an assertion of this right to the jury as evidence of guilt. The defendant further submits that his consultation admitted of myriad interpretations and was "insolubly ambiguous" under the rationale of *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), and that the rationale of *Johnson v. United States,* 318 U.S. 189, 63 S.Ct. 549, 87 L.Ed. 704 (1943), requires this court to reverse the conviction by condemning a procedure whereby the Government has penalized Kopel for consulting with his attorney after having informed him that he had a right to do so.

We agree with the Government that the fact that Kopel left the room in order to consult with his attorney was highly relevant. We do not agree with the defendant's assertion that Kopel's exercise of his right to consult counsel has no tendency to prove or disprove the perjury charges against him. The evidence showing the consultation tended to prove that Kopel's statements were made in a deliberate fashion rather than as the result of inadvertence and mistake. That Kopel conferred with his attorney regarding straightforward questions regarding his receipt of monies as a police officer tended to show that he was being very careful in answering the simple questions and that his answers were made wilfully and knowingly. There was no insoluble ambiguity.

Of course, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Fed.R.Evid. 403. In the instant case, we find no basis for concluding that exclusion of that portion of the grand jury transcript which highlighted Kopel's consultation with his counsel was a preordained result of the balancing of probative force with prejudicial impact.

We cannot agree with Kopel that he was entrapped in a manner comparable to that disclosed in *Raley v. Ohio,* 360 U.S. 423, 79 S.Ct. 1257, 3 L.Ed.2d 1344 (1959). In that case, the defendants were informed that they could rely on their privilege against self incrimination, but were subsequently convicted for contempt because of their failure to answer certain questions. The Court stated that sustaining the judgment "would be to sanction an indefensible sort of entrapment by the State—convicting a citizen for exercising a privilege which the State had clearly told him was available to him." 360 U.S. at 426, 79 S.Ct. at 1260. Here, the jury did not convict the defendant for the exercise of his right to consult with counsel outside the grand jury room. Instead, it convicted the defendant for knowingly and wilfully making false material statements.

We also are of the opinion that merely because an Assistant United States Attorney gives a grand jury witness permission to consult with his attorney during the course of his testimony there is not thereby created some sort of an estoppel. The general rule is that the Government is not to be estopped in its governmental functions. *See generally In re Daley,* 549 F.2d 469 (7th Cir. 1977). We fail to see any reason for not here applying the general rule.

In this case, the record establishes that the prosecutor conducted the grand jury in accordance with law. *See United States v. Mandujano,* 496 F.2d 1050 (5th Cir. 1974), *rev'd,* 425 U.S. 564, 96 S.Ct. 1768, 48

L.Ed.2d 212 (1976). At no time did the prosecutor intimate that the evidentiary holding of *Gebhard, supra,* would be inapplicable in Kopel's case should the grand jury disbelieve his denials of the receipt of monies from retail liquor dealers and return a true bill accusing the appellant of making false material statements. Moreover, *Demopoulos, supra,* was already decided at the time of Kopel's appearance, with counsel, before the Special March 1974 Grand Jury. Thus, Kopel should not have been misled into thinking that a full transcript reflecting the fact of his consultation would not be offered as evidence should he be charged with violation of 18 U.S.C. § 1623. On the present record, there is no basis for a finding of entrapment or estoppel under *Raley* and *Johnson, supra.*

■ Further, we cannot agree with the defendant's implied assertion that laymen would view a putative defendant's use of counsel in a grand jury appearance as a "badge of guilt." While the Supreme Court in *Ullmann v. United States,* 350 U.S. 422, 426, 76 S.Ct. 497, 100 L.Ed. 511 (1956), asserted that too many Americans viewed the Fifth Amendment privilege as a "shelter for wrongdoers," it has never found such widespread misunderstanding regarding the Sixth Amendment guarantee of effective assistance of counsel. Certainly today, when the layman frequently views our criminal justice system as being confusing and complex, consultation with an attorney is not tantamount to an admission of involvement or guilt. That "the average [putative] defendant does not have the professional legal skill to protect himself when brought before a tribunal . . . wherein the prosecution is [represented] by experienced and learned counsel" has realistically been recognized as an obvious truth. *See United States v. Mandujano,* 425 U.S. 564, 604–05, 96 S.Ct. 1768, 1790, 48 L.Ed.2d 212 (1976) (Brennan, J., concurring in judgment). Because the average layman would recognize that a police officer suspected of extortion, whether innocent or guilty, would seek the advice of an attorney when appearing before a grand jury investigating violations of federal law, there is no sound basis for inferring that petit jurors would view the use of professional assistance as an indication of criminality.

■ The appellant urges reversal because the admission of transcripts reflecting consultation with counsel will have a "chilling effect" on Sixth Amendment rights. Assuming arguendo that the practice of having counsel present outside the grand jury room for consultation is constitutionally derived, *but see Mandujano, supra,* 425 U.S. at 608, 96 S.Ct. 1768, we find nothing in the present record which demonstrates such a chill on the exercise of that right as to require the exclusion of an exhibit reflecting the highly probative fact of consultation. The appellant's argument pushes too far. Ordinarily, the fact of consultation will be totally irrelevant to the material issues in a criminal trial. Moreover, if jurors drawn from the community regarded the use of counsel in a grand jury appearance as a strong indication of criminal involvement, a fundamental premise of our criminal justice system would be shaken. The weakness of the appellant's argument is perhaps best highlighted by looking at the trial situation. Under an extreme formulation of the argument, criminal defendants would not use attorneys at trial because of the possibility that the jurors, even though instructed as to the requirement of reasonable doubt, would view the use of defense counsel as a strong indication of guilt. Further, no potential defendant who wanted to avoid having an indictment brought against him would dare to take counsel with him when appearing before a grand jury. If a trial jury which must convict beyond a reasonable doubt would infer criminality from the presence of the counsel at the grand jury proceedings, *a fortiori* the grand jury itself, which only has to find probable cause, would draw this inference. We find farfetched any suggestion that modern jurors seriously entertain the view that innocent men would disdain the services of counsel and appear *pro se* to establish their innocence. The "chilling effect" argument requires this court to imagine speculative situations which have no firm correlation with empirical facts.

The defendant's final contention concerning the use of the grand jury transcript revolves around the claimed inadequacy of one of the instructions given by the court, which instruction was apparently a sequel to the Government's tender of its No. 45. Inasmuch as consideration of this aspect is also closely intertwined with the distinct issue of prejudicial joinder, we will defer consideration until Part II of this opinion.

■ In sum, we think that the neutral references to Kopel's consultations with his attorney cannot be characterized as possessing a prejudicial impact which substantially outweighs their probative force as to the deliberateness of the false statements. To the extent that the Government's argument for admission rests on *Gebhard, supra,* we follow that precedent.

## II. Prejudicial Joinder

The appellant argues that he was prejudiced by the joinder of the two extortion counts with the two perjury counts. Recognizing that this court has reviewed several cases involving police officers and extortion-perjury, the appellant asks the court to reconsider and re-review the precedents.

■ As this court has frequently observed, a denial of a motion for severance under Rule 14, Fed.R.Crim.P., is reviewable only for abuse of discretion or plain error affecting substantial rights. *See, e. g., United States v. Rajewski,* 526 F.2d 149 (7th Cir. 1975), *cert. denied,* 426 U.S. 908, 96 S.Ct. 2231, 48 L.Ed.2d 833 (1976). The defendant must make a "strong showing of prejudice" in order to support a claim of prejudicial joinder. *Id.* at 153.

The appellant attempts to meet his burden by remarking that no case has been found involving separate alleged extortions from separate victims in separate police districts by a single defendant and that no decisions have been unearthed involving separate counts of perjury by the same defendant before separate grand juries. Appellant argues that simple common sense requires adherence to the view that each count tracked the other with a double-teaming effect, relying essentially on the dissenting opinions in *United States v. Pacente,* 503 F.2d 543, 553 (7th Cir. 1974) (en banc), which case the Government cites as controlling the instant litigation.

■ We are not persuaded that the joinder of two extortion counts and two false declaration counts effectively distinguishes the instant case from *Pacente, supra.* The problem of spillover and double tracking of counts and evidence is virtually identical. In *Pacente,* as here, a Chicago police officer was charged both with extorting money from a liquor store owner and with lying to the grand jury. While there are two distinct counts both of extortion and of perjury in the instant case, it is basically a replication of *Pacente.*

Kopel primarily asks us to depart from the majority holding in *Pacente,* as well as holding that the grand jury testimony was improperly before the trial jury, because of a particular instruction given by the court. The developments with regard to the giving of this instruction demonstrate once again that mistakes seldom go single-handedly.

The Government, citing La Buy 7.03 [33 F.R.D. 606 (1963)], tendered its instruction No. 45 reading as follows:

> The defendant is charged with a separate crime in each count of the indictment. Each crime and the evidence pertaining to it should be returned as to each count. Defendant's guilt or innocence of the crime charged in one count should not affect the jury's verdict on any other count. If the jury finds that the defendant is guilty beyond a reasonable doubt of any one of the crimes charged in the indictment a verdict of guilty should be returned as to that count.

Although it was not commented on in the conference on instructions, the second sentence of this instruction as tendered makes no sense whatsoever. An examination of the La Buy 7.03 quickly demonstrates what was probably a typical typographical skipping omission as shown in the italicized portion of the sentence as it appears in 7.03:

> Each crime and the evidence pertaining to it should be *considered separately by*

*the jury, and a separate verdict should be* returned as to each count.

At this point we must refer to a tactic of the defendant with regard to instructions the purpose of which eludes us unless it was to provide a basis of error notwithstanding *Pacente.* The majority opinion in that case found jury fortification and "meaningful protection" for the defendant in the cautionary instruction given by the court in that case, the final paragraph of which reads as follows:

> Now, there are two counts in this indictment, and, as I have told you, each one charges a separate crime. You should consider each one separately. The defendant's guilt or innocence of the crime charged in one count should not affect your verdict on the other count. . . .

*Pacente, supra* at 548. The Government in the present case tendered three instructions, Nos. 30, 41, and 45, each of which contained a sentence indicating that the defendant's guilt or innocence of the crime charged in one count should not affect the jury's verdict on any other count. Nevertheless, and notwithstanding *Pacente,* when No. 30 was reached at the instruction conference, the defendant asked that the particular sentence be taken out. This was done despite the misgivings of the Government. For some reason which does not appear in the record, but which may well have been oversight in view of the apparent trial tactic of objecting to the sentence in question, no objection was made to No. 41; however, after No. 43 (given by the court but not here involved) was reached, the court asked, "Are we done?" upon which the following occurred:

> Mr. Tuite: There is one other one, I am sorry, Judge.
>
> The Court: Oh, yes. Excuse me.
>
> Mr. Tuite: On 45, we have that problem again with defendant's guilt or innocence of the crime charged in one count, that it should not affect the jury's verdict on any other count which we discussed before in the middle of the instruction.
>
> The Court: Well, I will take that out.

As a result of further conference the court indicated that No. 45 would be given in substantially the following form:

> The defendant is charged with a separate crime in each count of the indictment. Each crime and the evidence pertaining to it should be separately considered by you.

The court, however, did not give the instruction in this form but from what as far as we can tell was an extemporaneous reformulation, stated the following:

> And I don't think that I have to remind you that the defendant, in effect, is charged with a separate crime in each count of the indictment; you have got Count 1, Count 2, and then the two perjury counts, and each crime and the evidence pertaining to it should be separately considered by you and the defendant's guilt or innocence of the crime charged in one count should not affect your verdict as to any other count, unless you think it should properly do so.

Almost all of the defendant's present contentions regarding severance and the use of the grand jury testimony rest upon the inclusion of the last eight words "unless you think it should properly do so."

As an initial matter we note that Kopel neither objected to the paragraph as given nor did he renew his motion for severance. Indeed, there was no reference to this paragraph of the instructions as given in the alternative motion, filed some eleven days after the verdict, for judgment of acquittal notwithstanding the verdict or for a new trial. The matter is raised for the first time in this court. The question then remains whether the use of the eight words as reflecting upon the issues of severance and use of the grand jury transcript is such plain error under Rule 52(b), Fed.R.Crim.P., as to require us to reverse the conviction and remand for a new trial.

 The change from the formulation of No. 45 which it was understood would be given represents precisely the kind of a situation which Rule 30, Fed.R. Crim.P., was designed to correct. *See generally United States v. Wright,* 542 F.2d 975

**1274**

(7th Cir. 1976), *cert. denied,* —— U.S. ——, 97 S.Ct. 810, 50 L.Ed.2d 790 (1977). Irrespective of whether under Rule 30 objections to instructions should be lodged prior to or after the giving of the charge, but before retirement for deliberation, in any event, it is clear that when a claimed objectionable matter develops for the first time during the process of the actual giving of the charge, the duty is manifest that objection thereto must be voiced before the jury does commence its deliberations. We should not, and will not, permit a litigant to sit quietly by observing the commission of what he claims at the appellate level is reversible error unless we are satisfied that the error was obvious, affected the substantial rights of the accused, and if uncorrected would be an affront to the integrity and reputation of judicial proceedings. *United States v. McCord,* 166 U.S.App.D.C. 1, 509 F.2d 334, 341 n. 10 (1974) (*en banc*), *cert. denied,* 421 U.S. 930, 95 S.Ct. 1656, 44 L.Ed.2d 87 (1975). We now look at the claim of reversible error in the light of those standards.

Taking up the eight words themselves, while we would not consider them apposite when examined in the light of *Pacente,* and, indeed, would tend to regard them as appearing to be inconsistent with the concept they follow of guilt or innocence on one count not affecting the verdict on any other count, nevertheless, we also must recognize that they contain a certain verity. Thus, as was pointed out in *Pacente,* the same evidence tends to support guilt in both the extortion and the grand jury counts. Likewise, it appears rather clear that if the jury determined beyond a reasonable doubt that Kopel had lied to the grand jury with regard to not receiving money from persons associated with taverns, such evidence would be at least a part of the case supportive of the extortion count to which the testimony before the grand jury would be applicable. Conversely, if the trial jury determined that Kopel had extorted money from persons associated with taverns as charged in the first two counts, his denial as to those receipts before the grand jury would be supportive of the second two

counts. Nevertheless, because in our opinion the jury should arrive at guilt or innocence as to each count independently of the other counts despite the inherent challenge to the human mind in compartmentalizing such thought processes, we can scarcely approve the inclusion of the eight words in question as a proper part of the instructions in this case. Nor do we think that the use of the word "properly," particularly in the absence of any explanation as to what constitutes propriety, is of any help.

In commenting upon the propriety of a trial-unchallenged instruction as it bears upon the issues now before us, however, we must not overlook the real thrust of the dissenting opinions in the *en banc Pacente* which is set forth in the original three-judge panel opinion, *United States v. Pacente,* 490 F.2d 661 (7th Cir. 1973), *cert. denied,* 419 U.S. 1048, 95 S.Ct. 623, 42 L.Ed.2d 642 (1974). That rationale rests upon the prejudice to the accused's case arising out of the fact that the joinder of the extortion and grand jury counts would convey to the trial jury the knowledge that "the grand jurors—laymen like themselves—believed the defendant to have lied to them." *Id.* at 664. This prejudice, the original panel held, could manifest itself in several ways; however, the en banc opinion admitting the conceivability of these factors held that "it is an unwarranted over-refinement to speculate that they present a significant danger that the trial jurors, acting together, will give weight to the conclusion reached by the grand jurors and fail to decide the issues of fact according to their own proper evaluation of the evidence." 503 F.2d at 547. Our task then is, accepting the *en banc* determination as the law of the circuit, to decide whether the inclusion of the eight additional words in the context of the present case is such as to "present a significant danger" that the defendant was deprived of a fair trial by the joinder and use of the grand jury transcript.

As a part of that context, we are satisfied that the full charge contained instructions more than adequately protective of the defendant's rights. Thus, the jurors were told

that they should not be prejudiced against the defendant simply because an indictment had been brought against him. Similarly, the jurors were informed that it was their duty to acquit Kopel if the Government failed to prove the defendant guilty beyond a reasonable doubt. As part of the instruction in question here, the jurors were instructed that each count charged a separate crime and that each crime and the evidence pertaining to it should be separately considered by them. Finally, the jurors were instructed in No. 41 and in the questioned instruction that guilt or innocence as to one count should not affect their verdict on any other count. To the extent that the eight word addition in the questioned instruction deviated from that principle the jurors were also informed that they should consider all the instructions together as a connected series and should not give special attention to a particular instruction or disregard instructions but should rather consider them altogether as the law of the case.

Further, as a matter of the context of this trial in which we are considering the claimed error, we note that the jury acted in a discriminating fashion indicating that it was not influenced either by the joinder, the grand jury transcript, or the inclusion of the additional eight words. The jury's verdict of acquittal on Count II itself severely undermines Kopel's argument that the counts had a "double-teaming" or "tracking" effect.

Count II charged extortion in connection with Vernice Glover's Liquor Store. Vernice Glover, who was a Government witness at the trial, had testified before the Special March 1974 Grand Jury. She testified at the trial about a $300 payment which a man by the name of Saul told her she would have to make if she was not to lose her license. A man with Saul came in later to pick up the money. In the grand jury testimony which was read into evidence, Kopel denied familiarity with the Glover store; he did not recall receiving any money from anyone associated with that enterprise; and he specifically denied receiving $300 on any occasion from a tavern in the

15th District. This was the so-called Austin district in which the Glover tavern was located. Count IV of the indictment in part charged that Kopel falsely declared that he had not received $300 on any occasion from a tavern in the 15th Chicago Police District. Here, while it was apparent that the grand jury did not believe Kopel, the trial jury nevertheless found him not guilty of extorting from the Glover tavern. While we, of course, do not know the basis of the jury's decision, we do note the weakness of the identification of the defendant as the person with whom she dealt on the $300 payment. The main fact here, in any event, is that the jury did not let its determination of guilt on other parts of Count IV interfere with its determination of lack of proof beyond a reasonable doubt as to Count II.

Finally, as to contextual matters, we simply cannot ignore the objective fact that the problem of the questioned instruction and the claim that it took the case out of *Pacente* arose from Kopel's attorney attempting to delete a "meaningful protection" against "double tracking." We would undermine the doctrine of *stare decisis* and promote a gamesmanship approach to criminal justice if we allowed a defense attorney both to invite and acquiesce in instruction error at the trial level and thereby overturn jury verdicts only remotely influenced by arguably improper verbal formulations.

We find guidance in the determination of the present issue in *United States v. Baratta*, 397 F.2d 215 (2d Cir. 1968), *cert. denied*, 393 U.S. 939, 89 S.Ct. 293, 21 L.Ed.2d 276. In that case the trial judge in instructing the jury used language which the Second Circuit had expressly condemned in another case as erroneously allowing the jury to use the preponderance of evidence standard in a criminal case. No exception was taken to the giving of the instruction. Language was used "which could have been readily corrected had objection been made . . . ." *Id.* at 227. The court held that under the circumstances, the jury having been earlier properly instructed upon the burden of proof resting upon the Government, the isolated use of the unfortunate

phraseology was not one of the plain errors or defects affecting substantial rights which would call for vacating the convictions. *Id.*

In sum, considering all of the circumstances in this case bearing upon the issues of severance and the admission of the grand jury testimony, we find no basis for reversal.

## III. Pre-Indictment Delay

The appellant raises as plain error under Rule 52(b), Fed.R.Crim.P., what he characterizes as a "speedy trial" violation occasioned by the forty-six (46) month period between his first appearance before the federal grand jury and the filing of the indictment. He argues that this type of pre-indictment delay may well be sufficient to invalidate these proceedings based upon the denial of Kopel's Sixth Amendment right.

In *Dillingham v. United States*, 423 U.S. 64, 96 S.Ct. 303, 46 L.Ed.2d 205 (1975), the Supreme Court confirmed its holding in *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), that the protection of the Sixth Amendment is activated only when a criminal prosecution has begun and extends only to those persons who have been "accused." The status of an "accused" is attained only upon "a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge . . . ." *Marion, supra* at 320, 92 S.Ct. at 463. The *Marion* court stated, however, that dismissal of the indictment would be required, on due process grounds, if it were shown at trial that preindictment delay caused substantial prejudice to the defendant's rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused. *See id.* at 324, 92 S.Ct. 455.

Here, the record contains no hint that the delay was an intentional device to gain an advantage for the prosecutor. Indeed, the delay is ultimately traceable to the defendant. Had Kopel not perjured himself before the grand jury in his initial appearance, thereby impeding its investigation into police corruption, there would not have been any delay. Moreover, Kopel has not made the requisite showing of any real prejudice to his defense. Indeed, the defendant has made not even an allegation of prejudice, and the record establishes that no motion to dismiss on the basis of pre-indictment delay was ever presented to the district court. We conclude that Kopel's speedy-trial—due process contention is wholly meritless.

## IV. Sufficiency of the Evidence

[19, 20] The appellant argues that there was insufficient evidence to convict him of the crimes charged. Viewing the evidence in the light most favorable to the government, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942), this argument must likewise fail. There was both direct and circumstantial evidence establishing Kopel's guilt. The major weakness in the Government's case was one of identification. However, Hayes Harris, a tavern owner, testified directly that he had given cash to Kopel on a monthly basis. The jury was in the best position to assess the credibility and weight of Harris' testimony regarding payments and Kopel's denial thereof. We are satisfied that the jury could reasonably find that Kopel extorted monies from tavern owners and that his denials were false.

For the reasons herein stated, the judgment is

## AFFIRMED.

SWYGERT, Circuit Judge, dissenting.

I respectfully dissent from the majority's conclusion that it was permissible to show the jury the portions of the grand jury transcript revealing that Kopel consulted his attorney before answering incriminating questions. I would vacate Kopel's perjury convictions under *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), and find the majority's position to be in conflict with that decision.

In *Doyle*, the defendants were accused of selling marijuana to a local narcotics bu-

reau informant. The basis of their defense at trial was that although they had met with the informant, as the Government claimed, their intent at the meeting was to buy marijuana rather than to sell it. The prosecutor attempted to impeach this theory by asking the defendants why, if they had not been selling marijuana, they had failed to explain this fact to the officer who arrested them. The defendants' attorney objected to this line of questioning, contending that, since the defendants had been given *Miranda* warnings upon being arrested, no inference could be drawn from their silence. The defendants were convicted by a jury.

The Supreme Court reversed the convictions, holding that it was a violation of due process for the state to first advise the defendants that they had the right to remain silent and then attempt to use that silence to impeach the defendants' testimony at trial. The Court stated that postarrest silence is "insolubly ambiguous" because it might be nothing more than an arrestee's exercise of *Miranda* rights. The Court further pointed out that "while it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings." 426 U.S. at 618, 96 S.Ct. at 2245.

The grand jury testimony issue in this case is controlled by *Doyle*. Kopel was advised that he had the right to leave the grand jury room and consult his attorney before answering any questions. He exercised that right in reliance on this advice, and the Government should not be permitted to "sandbag" him by using the fact that he consulted his attorney against him. Like the postarrest silence of the defendants in *Doyle*, Kopel's conduct is "insolubly ambiguous." He may have wanted to check with his attorney to refresh his memory as to whether he had received money from tavern owners or liquor distributors for non-criminal purposes which nonetheless fell outside the categories enumerated by the United States Attorney. Alternatively, he may have decided before the questioning

began that he would automatically consult his attorney as a precaution before answering any potentially incriminating questions.

The majority reasons that Kopel's argument must fail because the fact that he left the room to consult with his attorney was relevant to the issue of whether he committed perjury. I agree that this fact is relevant and tends to show that Kopel was guilty. If it were not, the action of the trial judge in permitting it to go to the jury could be no more than harmless error. But this does not end the analysis. The postarrest silence of the defendants in *Doyle* was certainly relevant to whether their theory of the case was true. The prosecutor was correct in suggesting that the typical person who was arrested and charged with a crime he did not commit would be likely to immediately protest his innocence. Thus, the defendants' silence after arrest was probative evidence that their story at trial was a fabrication. What the Court held in *Doyle*—and what should be dispositive in this case—is that it is unfair to advise a criminal defendant that he has certain rights and then use the exercise of those rights against him, even if that fact is relevant to the outcome at trial.