**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Daniel McCABE, Defendant-Appellant.**

**No. 83–1250.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 13, 1983.

Decided Nov. 8, 1983.

Rehearing Denied Dec. 6, 1983.

---

James C. Craven, Springfield, Ill., for defendant-appellant.

Gregory Harris, Asst. U.S. Atty., Springfield, Ill., for plaintiff-appellee.

Before POSNER and FLAUM, Circuit Judges, and GRANT, Senior District Judge.*

FLAUM, Circuit Judge.

This is an appeal from the defendant's conviction for conspiracy to distribute and possess marijuana with intent to distribute (count I of the indictment), and for possession of 198.1 pounds of marijuana with intent to distribute (count II of the indictment). For the reasons set forth below, we affirm the conviction.

The prosecution of the defendant arose out of a series of drug-dealing activities that took place in and near Springfield, Illinois, between August 23, 1981, and September 1, 1981. Although it is undisputed that the defendant was present in Springfield at some point during this time period, the United States and the defendant disagree as to the extent of the defendant's participation in these activities.

During the trial of this case, three named co-conspirators testified against the defendant as part of their plea agreements with the government. The chief government witness, Karl Knoneberg, testified that in the summer of 1981, he was selling marijuana, and he was in debt to Richard Schair, one of the chief partners in a drug operation that stored marijuana in a farmhouse in Andrew, Illinois, which is approximately ten miles from Springfield. In mid-August 1981, Knoneberg told the defendant, with whom he had a loose friendship, about the Springfield drug operation. According to Knoneberg, the defendant indicated that he would go to Springfield to view the marijuana. Knoneberg recounted that he met the defendant in Springfield at the Sky Harbor Inn on August 26, 1981, and they discussed marijuana prices and the need for a marijuana sample. After Knoneberg

* The Honorable Robert A. Grant, Senior District Judge of the Northern District of Indiana, is sitting by designation.

obtained a sample and showed it to the defendant, he took the defendant to meet Richard Schair, in an effort to boost his (Knoneberg's) credibility with Schair. At that meeting, an agreement was reached whereby the defendant would purchase approximately 200 pounds of marijuana with a $30,000 down payment and a promise to pay the balance within four days.

Knoneberg further testified that on the next morning, August 27, 1981, the defendant called to tell Knoneberg that the defendant's brother had arrived from Lansing, Michigan, with the down payment and with a car that would be used to transport the marijuana to Michigan. The following day, as described by Knoneberg, was filled with a series of activities through which the defendant paid for and received a large supply of marijuana: the defendant left the car at the Sky Harbor Inn with the keys under the mat and the $30,000 down payment under the car seat. Knoneberg took the defendant's car, and, while Knoneberg and Schair counted the defendant's money, one of Schair's workers, Daniel Richardson, went to the Andrew farmhouse and loaded the car with marijuana. When the car was loaded, Knoneberg drove it back to the Sky Harbor Inn and called the defendant to tell him that the car was ready and that they would see each other in four days, as planned.

Knoneberg testified that the defendant called the next day, August 29, 1981, apparently after the defendant had returned to Michigan, and he complained about the quality of some of the marijuana bales. Knoneberg told the defendant that he would show the defendant a larger sample when the defendant returned to Springfield. Knoneberg related that he obtained the larger sample of marijuana during the afternoon of August 31 and that, in the evening, he received a call from the defendant, who said that he was back in Springfield. The defendant came to Knoneberg's room at the Day's Inn to view the sample marijuana, and he paid Knoneberg the balance that he owed for the marijuana that he purchased on August 28. According to Knoneberg, the defendant agreed to buy more marijuana, based on the quality of the sample, and he gave Knoneberg a down payment for this new purchase. Knoneberg then delivered to Schair the balance for the August 28 purchase and arranged for a breakfast meeting between himself, the defendant, and Schair in order to discuss the way in which the defendant's second purchase would be executed. After breakfast on September 1, Knoneberg, Schair, and the defendant waited for Daniel Richardson to take the defendant's van to the Andrew farmhouse in order to load it with the new purchase of marijuana. When Richardson was late in arriving, Schair and Knoneberg went to the farmhouse, while the defendant was to wait at the Red Roof Inn for a call from Knoneberg when the van was loaded. Knoneberg then described how he and Schair successfully loaded the defendant's van with marijuana at the Andrew farmhouse and how, shortly thereafter, they were apprehended by law enforcement agents.

Richard Schair and Daniel Richardson were also co-conspirators who testified at the defendant's trial pursuant to plea agreements with the government. Both witnesses' testimony basically agreed with Knoneberg's accounts of the defendant's marijuana purchases and of the loading of the defendant's vehicles with marijuana. In addition, throughout their testimony, Schair and Richardson referred to various records that the drug operation maintained regarding the marijuana purchases of customers. One ledger contained an entry that recorded a purchase of 198.1 pounds of marijuana on August 28, 1981, and that contained the notation "Karl, Ann Arbor," which, according to the witnesses, indicated that the purchase was made by a customer of Knoneberg in the Ann Arbor, Michigan, area.

The defendant took the stand in his own defense and denied that he had taken part in any drug-related activities. He stated that he met Karl Knoneberg in Florida during the winter of 1981, and that he and Knoneberg kept in touch when the defendant returned to Traverse City, Michigan,

where he owned a landscaping business. According to the defendant, Knoneberg called him in August 1981 and asked him if he wanted to get together in Springfield for a weekend. Knoneberg called again and asked to borrow the defendant's van in order to transport photographic equipment from Springfield to Pennsylvania. The defendant agreed and sent his brother, Kevin, to pick up the van in Lansing, Michigan, and to drive it to Springfield. After Kevin arrived in Springfield, Knoneberg called the defendant in Michigan, and the defendant agreed to come to Springfield for the weekend. The defendant testified that he came to Springfield on August 27, and that he spent the day sightseeing with Kevin and Knoneberg. That evening the defendant went with Knoneberg to Schair's room at the Sheraton Inn as a favor to Knoneberg. Knoneberg had told the defendant that Schair had pointed a pistol at him (Knoneberg), and that it would give Knoneberg credibility if the defendant would go to Schair and say that he (the defendant) was from Michigan. According to the defendant, he and Knoneberg spent only about five or ten minutes in Schair's room, and the defendant never saw Schair again. The defendant further testified that, after this visit to Schair's room, he and Kevin went to a number of taverns and then spent the night at the Sky Harbor Inn. The next night, the defendant and Kevin stayed in Knoneberg's room at the Day's Inn, where they remained until September 2. On September 1, Knoneberg borrowed the defendant's van and never returned. The defendant testified that he called either the sheriff's department or the police and learned that Knoneberg had been arrested. The defendant and Kevin left Springfield on September 2, taking Knoneberg's rented car. They then rented another car in Indianapolis and returned to Michigan.

The defendant was indicted in January 1982 for conspiracy to distribute and possess marijuana with intent to distribute and for possession of marijuana. He was convicted after a jury trial. In appealing his convic-

tion, the defendant primarily argues that the trial court committed plain error by failing to give a cautionary instruction regarding the credibility of the co-conspirators, despite the fact that defense counsel did not request such an instruction. The defendant contends that this court and other federal appellate courts apply the plain error doctrine to reverse every case of failure to give a cautionary accomplice instruction where there is an absence of corroborative evidence. It is the defendant's position that, in this case, no evidence corroborated the testimony of Knoneberg, Schair, and Richardson. According to the defendant, the ledger entry was not corroborative because it indicated that the purchaser of 198.1 pounds of marijuana on August 28, 1981, came from Ann Arbor, and there was no independent evidence connecting the defendant with Ann Arbor. The defendant also argues that the evidence regarding the loading of the defendant's van with marijuana at the Andrew farmhouse on September 1, 1981, was not corroborative because it was not inconsistent with the defendant's testimony that Knoneberg borrowed the van on that date. Furthermore, the defendant points out that an accomplice instruction was particularly necessary in this case because, prior to trial, Knoneberg voluntarily admitted to one of the defendant's attorneys that he had been pressured by federal authorities to change his story and to implicate the defendant. As further grounds for reversal, the defendant claims that the trial court erred in failing to grant a new trial based upon newly discovered evidence and that the trial court abused its discretion in considering the defendant's noncooperation with authorities as an aggravating factor in sentencing.

The United States refutes the defendant's claim of plain error. The government essentially argues that since the defendant had the opportunity at trial to raise the issue of the lack of an accomplice instruction but did not raise it, the issue has been waived on appeal.[1] The government goes

---

1. The government's brief is rather confusing on      this point. The government correctly admits

on to argue, apparently in the alternative, that the trial court's failure to give an accomplice instruction in this case was not reversible error since the testimony of the accomplices was corroborated by both the "Ann Arbor" entry in the drug operation's ledger and the evidence that the defendant's van was loaded with marijuana. The government also argues that the trial court was correct in denying the defendant's motion for a new trial and that the court did not abuse its discretion in sentencing the defendant.

■ Under Rule 52(b) of the Federal Rules of Criminal Procedure,[2] a reviewing court may examine a contention that counsel failed to raise at trial, whether or not counsel had the opportunity to raise it. *See United States v. Lewis,* 484 F.2d 734, 737 (7th Cir.), *cert. denied,* 414 U.S. 1070, 94 S.Ct. 582, 38 L.Ed.2d 476 (1973). Such contentions, however, must be newly-raised questions of law, untainted by factual ambiguity. *Id.* In the present case, the defendant's contention that the lack of a cautionary accomplice jury instruction was reversible error is a question of law that is free from factual ambiguity and is thus properly before this court.[3]

■ The practice of giving a specific jury instruction regarding the credibility of an accused's co-conspirators or accomplices has been discussed extensively in the federal courts. The general rule is that accomplice instructions are preferred when accomplices testify against defendants, due to the inherent unreliability of this testimony, but the failure to give such an instruction is not reversible error. *Caminetti v. United States,* 242 U.S. 470, 495, 37 S.Ct. 192, 198, 61 L.Ed. 442 (1917). *See also Holmgren v. United States,* 217 U.S. 509, 523–24, 30 S.Ct. 588, 591–92, 54 L.Ed. 861 (1910). Some federal circuit courts have gone further by finding reversible error in cases where an accomplice instruction was not given and no other evidence corroborates the accomplice testimony. *See, e.g., United States v. Hill,* 627 F.2d 1052 (10th Cir.1980); *United States v. Davis,* 439 F.2d 1105 (9th Cir. 1971); *Tillery v. United States,* 411 F.2d 644 (5th Cir.1969). Significant corroboration of accomplice testimony, however, has prevented courts from finding reversible error when accomplice instructions were not given. *See, e.g., United States v. Lee,* 506 F.2d 111 (D.C.Cir.1974) (accomplice's testimony was "materially corroborated"), *cert. denied,* 421 U.S. 1002, 95 S.Ct. 2403, 44 L.Ed.2d 670 (1975); *United States v. Williams,* 463 F.2d 393 (10th Cir.1972) ("considerable evidence" corroborated the accomplice's testimony); *Christy v. United States,* 261 F.2d 357 (9th Cir.1958) ("ample corroborating testimony" accompanied the testimony of the accomplices).

The Seventh Circuit has recognized the beneficial value of accomplice instructions.

that certain issues may be raised on appeal though they were not raised at trial, yet it fails to explain how the jury instruction issue in this case does not qualify for such review. *See* Appellee's Brief at 19.

**2.** Rule 52(b) of the Federal Rules of Criminal Procedure provides: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

**3.** At oral argument, counsel for the United States suggested that Rule 52(b), the plain error rule, is not applicable in this case. Counsel referred this court to the government's brief, where the United States seems to rely on this court's opinion in *United States v. Kopel,* 552 F.2d 1265, 1274 (7th Cir.), *cert. denied,* 434 U.S. 970, 98 S.Ct. 520, 54 L.Ed.2d 459 (1977), for the holding that, in the absence of a defense objection at trial, plain error in jury instructions will not be found unless (1) the error is obvious, (2) the error affected the substantial rights of the accused, and (3) if the error is left uncorrected, it would be an affront to the integrity and reputation of judicial proceedings. This is an incorrect interpretation of *Kopel.* The *Kopel* decision set forth a three-prong standard that the reviewing court must use to determine *reversible* error on the issue of jury instructions when the defendant fails to raise the issue at trial. Since, under Rule 52(b), plain error reviewable on appeal is not necessarily reversible error, *see United States v. Wilson,* 690 F.2d 1267, 1274 (9th Cir.1982), this court in *Kopel* actually applied Rule 52(b) merely by reviewing the jury instruction error according to the three-prong standard.

*United States v. Bucur,* 194 F.2d 297, 305 (7th Cir.1952); *Ruvel v. United States,* 12 F.2d 264, 265 (7th Cir.1926); *Wallace v. United States,* 243 F. 300 (7th Cir.1917). *See also United States v. Regilio,* 669 F.2d 1169, 1178 (7th Cir.1981), *cert. denied,* 457 U.S. 1133, 102 S.Ct. 2959, 73 L.Ed.2d 1350 (1982); 3.22 Federal Criminal Jury Instructions of the Seventh Circuit. When an accomplice testifies for the government and the testimony does not exculpate the defendant, and when the trial judge either refuses a tendered accomplice instruction or fails to give such an instruction sua sponte, the first step for the reviewing court is to determine whether the failure to instruct is error. This court has ruled, in a manner similar to that of other circuits, *see* cases cited *supra,* that the lack of an accomplice instruction is error if the accomplice testimony is not supported by a minimum amount of corroboration. *See United States v. Wasko,* 473 F.2d 1282, 1284–85 (7th Cir.1973) (where much of the testimony against the defendant by a witness who participated in the crime was uncorroborated, the trial court's rejection of an accomplice instruction was error); *United States v. Levi,* 177 F.2d 827, 831 (7th Cir.1949) (where, in the absence of accomplice testimony, only suspicious circumstances were proved against the defendant, the lack of an accomplice instruction was error). To find that the absence of an accomplice instruction is not error, we must be satisfied that the amount of corroborative evidence is adequate to overcome the inherent unreliability of accomplice testimony.

■ This minimum amount of corroboration is not shown in the record of the present case. Only two items of evidence corroborate the testimony of Knoneberg, Schair, and Richardson: first, the ledger entry describing the sale on August 28, 1981, and second, the surveillance and subsequent seizure of the defendant's van, which was loaded with marijuana. The ledger entry is weak corroboration because it merely indicates that a sale was made to a customer of Knoneberg with ties to Ann Arbor. At trial, the only link between the defendant and Ann Arbor was made by Schair, as he recounted a conversation between himself and the defendant in which Schair asked if the defendant was acquainted with some of Schair's friends in the Ann Arbor area. This testimony created a circular dilemma: in order to utilize the ledger entry to bolster the reliability of the accomplices' testimony, the jury had to believe Schair's testimony, which the law considers to be inherently unreliable. Furthermore, the evidence that the defendant's van was loaded with marijuana was weak corroboration of the accomplices' testimony because it was as consistent with the defendant's exculpatory testimony as it was with the accomplices' inculpatory testimony. Thus, taken together, the two items of corroborative evidence are not enough to overcome the inherent unreliability of the accomplices' testimony, and the failure of the trial court to give an accomplice instruction is error.

The second step in our review is to determine whether the error of omitting the accomplice instruction is harmless.[4] When considering this question in *United States v. Levi,* 177 F.2d at 832, this court adopted the definition of harmless error put forth by the United States Supreme Court in *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946):

> [I]f one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is

---

4. "[A]n error unobjected to at trial may be so plain as to warrant review under Rule 52(b) [of the Federal Rules of Criminal Procedure]; yet the error may be harmless and, therefore, not justify a reversal." *United States v. Wilson,* 690 F.2d 1267, 1274 (9th Cir.1982).

rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.[5]

When "pondering all that happened" in order to determine if a judgment was "swayed" or influenced by the error of omitting an accomplice instruction, we must consider whether the jury was made aware of the interests of the accomplices during the various phases of the trial, such as direct examination, cross examination, closing argument, or through another jury instruction regarding witness credibility. *See United States v. Velez,* 652 F.2d 258, 261 n. 5 (2d Cir.1981) (where defense counsel argued lack of accomplice's credibility in his summation, omission of accomplice instruction was not prejudicial); *United States v. Abrams,* 427 F.2d 86, 90–91 (2d Cir.) (where trial court gave the usual instruction concerning the credibility of witnesses, omission of special instruction on accomplice testimony did not justify reversal), *cert. denied,* 400 U.S. 832, 91 S.Ct. 64, 27 L.Ed.2d 63 (1970); *United States v. Cianchetti,* 315 F.2d 584, 592 (2d Cir.1963) (failure to give accomplice instruction was not a cause for reversal where trial judge gave usual instruction as to bias of witnesses, and defense counsel made references to inconsistencies in testimony of government witnesses both in closing argument and in motions to the court). *See also United States v. Brawer,* 482 F.2d 117, 131 (2d Cir.1973) (where, on cross-examination, defense counsel called to the jury's attention the possibility that the accomplice/witness may have been lying at trial, the court's refusal to review for the jury the accomplice's more favorable grand jury testimony was not prejudicial), *cert. denied,* 419 U.S. 1050, 95 S.Ct. 628, 42 L.Ed.2d 646 (1974).

In the present case, the fact that Knoneberg, Schair, and Richardson were testifying pursuant to plea agreements was covered extensively during both direct examination and cross examination of the witnesses. Furthermore, one of the defendant's attorneys spoke at great length about the interests of the three co-conspirators during his closing argument. Finally, the trial court did give the jury a general instruction regarding the credibility of witnesses.[6] After considering these factors, we conclude "with fair assurance" that the judgment of guilty was not substantially influenced by the trial court's error of failing to give an accomplice instruction, and the error is thus harmless.

We have considered the defendant's other arguments for reversal and find them without merit. Accordingly, the judgment is affirmed.

---

**5.** This test for harmless error is a subset of the three-prong test for reversible error set forth in *Kopel. See supra* note 3. If, according to the *Kotteakos* test, a reviewing court finds that a judgment was substantially influenced by error, then it necessarily concludes that substantial rights were affected, and one prong of the *Kopel* test is satisfied. If the reviewing court does not find that the judgment was substantially influenced by error, then the substantial rights prong of the *Kopel* test is not satisfied, and there can be no reversible error.

**6.** The general credibility instruction was given as follows:

> You are the sole judges of the credibility of the witnesses and of the weight to be given the testimony of each of them. In considering the testimony of any witness, you may take into account his intelligence, his ability and opportunity to observe, his memory, his manner while testifying, any interest, bias or prejudice he may have, and the reasonableness of his testimony considered in the light of all the evidence in the case.

Trial Transcript at 641.